# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60378

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2014

Lyle W. Cayce
Clerk

KELSEY NOBACH,

> Plaintiff – Appellee Cross-Appellant

v.

WOODLAND VILLAGE NURSING CENTER, INCORPORATED,

> Defendant – Appellant Cross-Appellee

v.

LOCOCO & LOCOCO, P.A.,

> Appellee

_____

Consolidated with No. 13-60397

KELSEY NOBACH,

> Plaintiff – Appellee Cross-Appellant

v.

WOODLAND VILLAGE NURSING CENTER, INCORPORATED,

> Defendant – Appellant Cross-Appellee

Appeals from the United States District Court
for the Southern District of Mississippi

No. 13-60378

Before JOLLY, SMITH, and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Kelsey Nobach was a nursing home activities aide who was discharged by Woodland Village Nursing Center ("Woodland") because she refused to pray the Rosary with a patient. Nobach contends, and the jury found, that Woodland violated Title VII of the Civil Rights Act of 1964 by unlawfully discharging her for exercising her religious beliefs. On appeal, the determinative question is whether Nobach failed to produce sufficient evidence that Woodland knew of her religious beliefs before it discharged her. We find no such evidence anywhere in the record and hold that a reasonable jury would not have had a legally sufficient basis to find that Woodland violated Title VII by discharging her. Therefore, we REVERSE the district court's denial of Woodland's motion for judgment as a matter of law, VACATE the judgment, and REMAND for entry of judgment consistent with this opinion.

I.

We begin with the relevant facts and consider them in the light most favorable to the jury verdict. Nobach was first hired as an activities aide in August 2008. Her employment spanned thirteen months during which she received four negative employment write-ups, two of which were for continual tardiness, one for making a false accusation against a co-worker, and another for stealing a resident's nail polish, all noted in her employment record.

On September 19, 2009, Nobach was called to work an unscheduled shift in the facility's main hall where she did not usually work. Early in her shift Nobach began a transfer of a resident from the main hall back to the resident's room, one of her normal duties as an activities aide. A certified nurse's assistant ("CNA"), a non-supervisory employee with no responsibilities over Nobach, told Nobach that a particular resident had requested that the Rosary be read to her. Nobach told the CNA that she could not because it was against

2

her religion. Although she did not explain her religious beliefs to the CNA, or to anyone for that matter, Nobach later explained—after she had been discharged—that she is a former Jehovah's Witness who had been disfellowshipped (expelled) from the church following her refusal to repent for her sins when she was sixteen years old.[1]

After telling the CNA that she would not read the Rosary, she said to the CNA: "[I]f you would like to perform the Rosary, you're more than welcome to." The CNA remained silent. Nobach testified that she no longer thought anything of the conversation; neither did she make any effort to see that the resident's request was fulfilled. The Rosary was not read to the resident that day. The resident later complained to Lynn Mulherin, Woodland's activities director and Nobach's head supervisor, about this failure of the staff. Mulherin then consulted with James Williams, Woodland's Director of Operations. Williams investigated and ensured the resident that her requests would be promptly addressed in the future. After determining who was "on the floor" that day, Williams met with Mulherin and instructed her to write up both Nobach and Lorrie Norris, an activities supervisor and Nobach's immediate superior, for the incident. Following the meeting with Williams, Mulherin advised Williams that she had decided to discharge Nobach.[2]

On September 24, 2009, five days after Nobach refused the request, Mulherin called Nobach into her office along with Norris (who, along with

---

[1] Nobach further testified at trial that she had been baptized into the church at the age of nine and regularly attended services. Although she is no longer a member of the church, she testified that she still holds many of the Jehovah's Witnesses' beliefs and adheres to many of its central tenets, such as avoiding symbolism and, relevant here, not praying repetitive prayers. None of this information was provided to administrators at Woodland before her discharge.

[2] Mulherin was unavailable to testify at trial. Williams and Norris were the only two of Nobach's superiors to testify.

No. 13-60378

Nobach, testified at trial about the events of Nobach's discharge).[3]   Upon entering the office, Mulherin told Nobach that she was fired. When Nobach asked the reason, Mulherin said that Nobach had been written up for the incident, and was now fired for failing to assist a resident with the Rosary, which was a regularly scheduled activity when requested by a resident.  She told Nobach: "I don't care if it's your fifth write-up or not.  I would have fired you for this instance alone."   Nobach—for the first time—then informed Mulherin that performing the Rosary was against her religion, stating: "Well, I can't pray the Rosary.  It's against my religion."  Mulherin's response was: "I don't care if it is against your religion or not.  If you don't do it, it's insubordination."

During the meeting Mulherin handed two papers to Nobach, which had apparently been prepared before the meeting.  The record is unclear at which point during the meeting they were given to her.  The first paper was an employee reprimand which said: "See attached.  This is Ms. Nobach's 5th write up!"  Attached to the employee reprimand was a second sheet of paper titled "Employee Termination Report" ("Termination Report"), which stated as follows: "The employee has been written up 5xs.  The last write up on 9-24-09 for not doing [R]osary with resident is what brought forth termination.  She has refused to sign write up."

After her discharge, Nobach filed a charge against Woodland with the E.E.O.C., alleging religious discrimination.  In due course the E.E.O.C. issued Nobach a right to sue letter and Nobach filed this suit.  In her complaint she alleged that she had been fired because of her religion in violation of Title VII of the Civil Rights Act of 1964.  The case was tried to a jury of seven persons,

---

[3] There were no material inconsistencies between Norris's and Nobach's testimony about what transpired during the meeting between the three women.

No. 13-60378

which returned a verdict in Nobach's favor, awarding her $69,584.00. Woodland moved for judgment as a matter of law. The district denied the motion and Woodland filed this timely appeal.

## II.

Woodland raises three issues on appeal. First, it argues the district court erred by denying its renewed motion for judgment as a matter of law for insufficiency of the evidence to support a Title VII violation. Second, Woodland alleges that the district court submitted an erroneous instruction to the jury that substantially affected the outcome of the case. Third and finally, Woodland contends that the evidence does not support the verdict of $55,200 for emotional distress injuries and mental anguish. Nobach cross-appeals. She contends that the district court erred by refusing to give the jury a punitive damage instruction.

We need not reach the second and third issues raised in Woodland's appeal, nor do we find it necessary to address the cross-appeal. Instead, we hold that the district court erred when it denied Woodland's motion for judgment as a matter of law.

## III.

## A.

We review a district court's ruling on a motion for judgment as a matter of law de novo. *Brown v. Bryan Cnty.*, 219 F.3d 450, 456 (5th Cir. 2000). An appellant "who wishes to appeal on grounds of insufficient evidence must make a Rule 50(b) motion for judgment as a matter of law after the jury's verdict, even when the party has previously made a Rule 50(a) motion." *Downey v. Strain*, 510 F.3d 534, 543–44 (5th Cir. 2007). In this case, Woodland filed a post-verdict Rule 50(b) motion; thus, we have a basis "to review [its] challenge to the sufficiency of the evidence." *Id.* at 544. "On review of the district court's denial of such a motion, [we] use[] the same standard to review the verdict that

No. 13-60378

the district court used in first passing on the motion." *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995). Accordingly, our standard is whether "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." FED. R. CIV. P. 50(a)(1); *see also Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008) (stating that when a case "is tried by a jury[,]" as it was in this case, "a Rule 50(a) motion is a challenge to the legal sufficiency of the evidence").

On appeal, Woodland argues that the district court erred by denying its Rule 50 motion because Nobach failed to put on any evidence, direct or circumstantial, that Woodland had knowledge of her religion before it discharged her. Because Nobach did not introduce such evidence, Woodland contends that the jury could not have had a legally sufficient basis to find that it discriminated against her in violation of Title VII.

Nobach responds by arguing that she provided evidence of intentional discrimination to indicate that Woodland knew of her religious beliefs when it discharged her. Nobach's argues that evidence of intentional discrimination based on her religion includes: (1) Mulherin's reply to Nobach that she was being fired for not "pray[ing] the Rosary with a resident[,]" (2) the Termination Report, which stated that "[t]he last write up on 9-24-09 for not doing rosary with resident is what brought forth termination[,]" along with (3) Mulherin's two responses after she had discharged Nobach that "[i]t doesn't matter if its against your religion or not, if you refuse it's insubordination[,]" and "I don't care if you didn't have previous write-ups, I would have terminated you for this instance alone." According to Nobach, these statements evince Woodland's discriminatory animus against her Jehovah's Witness views.

## B.

Title VII makes it unlawful for an employer to discharge an individual "because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). An

employee may prove intentional discrimination "through either direct or circumstantial evidence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). Nobach contends that she offered direct evidence of Woodland's discriminatory animus that motivated her discharge. She relies primarily on Woodland's acknowledgement that she was fired for not praying the Rosary with the resident, and that Mulherin said that she did not care if performing the Rosary was against her religion, she still would have been fired because to refuse to perform the Rosary was insubordination.[4]

We of course fully accept Nobach's version of the discharge as the view that most favorably supports the jury verdict. In doing so, we have carefully searched the record for evidence of such support. Even so, we simply cannot find evidence that Nobach ever advised anyone involved in her discharge that praying the Rosary was against her religion. According to the record, neither did Nobach tell the CNA that she was a Jehovah's Witness. Nobach acknowledges that the only time she made any mention of her religious beliefs was when she told the CNA: "I can't do the Rosary with [the resident]. I'm not Catholic, and it's against my religion." Nobach has never even claimed that the CNA told anyone of her reason for refusing to aid the resident. In sum, she has offered no evidence that Woodland came to know of her bona-fide religious beliefs until after she was actually discharged.

---

[4] Although Nobach does not argue the point, other circuits have held that an employer has no obligation to withdraw its termination decision under Title VII based on information supplied after that termination decision has been made. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 319 (3d Cir. 2008) (holding that no duty to accommodate arises under Title VII when the employee fails to inform the employer that a requirement conflicts with his or her religious beliefs); *accord Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1020 (4th Cir. 1996) ("Giving notice to co-workers [of one's religious beliefs] at the same time as an employee violates an employment requirement is insufficient to provide adequate notice to the employer and to shield the employee's conduct."); *Johnson v. Angelica Unif. Grp., Inc.*, 762 F.2d 671, 673 (8th Cir. 1985).

No. 13-60378

Woodland must admit, as it does, that Nobach's failure to perform the Rosary with the resident was the factor that precipitated her discharge. If Nobach had presented any evidence that Woodland knew or reasonably should have known the cause for her refusing this task was her conflicting religious beliefs, the jury would certainly have been entitled to reject Woodland's explanation for Nobach's termination, but no such evidence was ever provided to the jury. We hold, therefore, that a reasonable jury would not have had a legally sufficient evidentiary basis to find that Woodland intentionally discriminated against Nobach because of her religion.[5]

## IV.

To sum up, we hold that the district court erred by not granting Woodland's Rule 50(b) motion for judgment as a matter of law because Nobach failed to produce any evidence of Woodland's knowledge, before termination, regarding her Jehovah's Witness beliefs. Without any evidence of such knowledge, "a reasonable jury would not have had a legally sufficient evidentiary basis" to find for her on her claim of religious discrimination under Title VII. The denial of Woodland's motion for judgment as a matter of law is REVERSED, the judgment is VACATED, and the case is REMANDED for entry of judgment consistent with this opinion.[6]

---

[5] With regard to Nobach's allegation of Woodland's failure to accommodate her religious beliefs, her claim fails for essentially the same reason—the failure to advise Woodland of her religious beliefs and the conflict with her job duties.

[6] Consistent with our holding, we need not address the other issues on appeal regarding the disputed jury instruction and damages.

8