# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

————

No. 13-60378

United States Court of Appeals
Fifth Circuit

**FILED**

August 20, 2015

Lyle W. Cayce
Clerk

————

KELSEY NOBACH,

> Plaintiff - Appellee Cross-Appellant

v.

WOODLAND VILLAGE NURSING CENTER, INCORPORATED,

> Defendant - Appellant Cross-Appellee

v.

LOCOCO ; LOCOCO, P.A.,

> Appellee

_____

Consolidated w/ 13-60397

KELSEY NOBACH,

> Plaintiff - Appellee Cross-Appellant

v.

WOODLAND VILLAGE NURSING CENTER, INCORPORATED,

> Defendant - Appellant Cross-Appellee

————

Appeals from the United States District Court
for the Southern District of Mississippi

————

No. 13-60378

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before JOLLY, SMITH and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Kelsey Nobach was a nursing home activities aide who was discharged by Woodland Village Nursing Center ("Woodland") because she refused to pray the Rosary with a patient. Nobach contends, and the jury found, that Woodland violated Title VII of the Civil Rights Act of 1964 by unlawfully discharging her for exercising her religious beliefs. On appeal, the determinative question is whether Nobach failed to produce sufficient evidence from which a jury could infer that Woodland was motivated by Nobach's religious beliefs before it discharged her. In an earlier opinion, we concluded that there was no such evidence anywhere in the record and held that a reasonable jury would not have had a legally sufficient basis to find that Woodland violated Title VII by discharging Nobach. *Nobach v. Woodland Vill. Nursing Ctr., Inc.*, 762 F.3d 442 (5th Cir. 2014). Consequently, we reversed and vacated the judgment of the district court and remanded for entry of judgment. *Id.*

Nobach petitioned for a writ of certiorari. The Supreme Court granted the writ and vacated and remanded the case for reconsideration in the light of *EEOC v. Abercrombie & Fitch Stores*, 575 U. S. ___, 135 S. Ct. 2028 (2015). *See Nobach v. Woodland Vill. Nursing Ctr., Inc.*, 135 S. Ct. 2803 (2015). We requested and received supplemental letter briefs addressing the impact of *Abercrombie* on Nobach's case. After considering the Supreme Court's decision in *Abercrombie* and the parties' briefing, we again REVERSE the district court's denial of Woodland's motion for judgment as a matter of law, VACATE the judgment, and REMAND for entry of judgment consistent with this opinion.

2

No. 13-60378

## I.

We begin with the relevant facts and consider them in the light most favorable to the jury verdict. Woodland first hired Nobach as an activities aide in August 2008. During her thirteen-month employment, Nobach received four negative employment write-ups: two for continual tardiness, one for making a false accusation against a co-worker, and one for stealing a resident's nail polish. Each write-up is recorded in Nobach's employment record.

On September 19, 2009, Nobach was called to work an unscheduled shift in the facility's main hall where she did not usually work. Early in her shift Nobach began a transfer of a resident from the main hall back to the resident's room, one of her normal duties as an activities aide. A certified nurse's assistant ("assistant"), a non-supervisory employee with no responsibilities over Nobach, told Nobach that a particular resident had requested that the Rosary be read to her. Nobach told the assistant that she could not because it was against her religion. Although she did not explain her religious beliefs to the assistant, or to anyone for that matter, Nobach later explained—after she had been discharged—that she is a former Jehovah's Witness who had been disfellowshipped (expelled) from the church following her refusal to repent for her sins when she was sixteen years old.[1]

After telling the assistant that she would not read the Rosary, Nobach said to the assistant: "[I]f you would like to perform the Rosary, you're more than welcome to." The assistant remained silent. Nobach testified that she no longer thought anything of the conversation; neither did she make any effort

---

[1] Nobach further testified at trial that she had been baptized into the church at the age of nine and regularly attended services. Although she is no longer a member of the church, she testified that she still holds many of the Jehovah's Witnesses' beliefs and adheres to many of its central tenets, such as avoiding symbolism and, relevant here, not praying repetitive prayers. None of this information was provided to administrators at Woodland before her discharge.

to see that the resident's request was fulfilled. The Rosary was not read to the resident that day.

The resident later complained to Lynn Mulherin, Woodland's activities director and Nobach's head supervisor, about this failure of the staff. Mulherin then consulted with James Williams, Woodland's Director of Operations. Williams investigated and ensured the resident that her requests would be promptly addressed in the future. After determining who was "on the floor" that day, Williams met with Mulherin and instructed her to write up both Nobach and Lorrie Norris, an activities supervisor and Nobach's immediate superior, for the incident. Following the meeting with Williams, Mulherin advised Williams that she had decided to discharge Nobach.[2]

On September 24, 2009, five days after Nobach refused the request, Mulherin called Nobach into her office along with Norris (who, along with Nobach, testified at trial about the events of Nobach's discharge).[3] Upon entering the office, Mulherin told Nobach that she was fired. When Nobach asked the reason, Mulherin said that Nobach had been written up for the incident and was now fired for failing to assist a resident with the Rosary, which was a regularly scheduled activity when requested by a resident. Mulherin told Nobach: "I don't care if it's your fifth write-up or not. I would have fired you for this instance alone." Then, for the first time, Nobach informed Mulherin that performing the Rosary was against her religion, stating: "Well, I can't pray the Rosary. It's against my religion." Mulherin's response was "I don't care if it is against your religion or not. If you don't do it, it's insubordination."

---

[2] Mulherin was unavailable to testify at trial. Williams and Norris were the only two of Nobach's superiors to testify.

[3] There were no material inconsistencies between Norris's testimony and Nobach's testimony concerning what transpired during the meeting between the three women.

No. 13-60378

During the meeting Mulherin handed two papers to Nobach, which had apparently been prepared before the meeting.[4]   The first paper was an employee reprimand which said, "See attached.  This is Ms. Nobach's 5th write up!"  Attached to the employee reprimand was a second sheet of paper titled "Employee Termination Report," which stated, "The employee has been written up 5xs.  The last write up on 9-24-09 for not doing [R]osary with resident is what brought forth termination.  She has refused to sign write up."

After her discharge, Nobach filed a charge against Woodland with the EEOC, alleging religious discrimination.  In due course the EEOC issued Nobach a right to sue letter, and Nobach filed this suit.  In her complaint she alleged that she had been fired because of her religion in violation of Title VII of the Civil Rights Act of 1964.  The case was tried to a jury, which returned a verdict in Nobach's favor.  Woodland moved for judgment as a matter of law. The district denied the motion, and Woodland filed this appeal.

## II.

Woodland raises three issues on appeal.  First, it argues the district court erred by denying its renewed motion for judgment as a matter of law for insufficiency of the evidence to support a Title VII violation. Second, Woodland alleges that the district court submitted an erroneous instruction to the jury that substantially affected the outcome of the case.  Third and finally, Woodland contends that the evidence does not support the verdict of $55,200 for emotional distress injuries and mental anguish.  Nobach cross-appeals. She contends that the district court erred by refusing to give the jury a punitive damage instruction.

---

[4] The record is unclear at which point during the meeting they were given to Nobach.

No. 13-60378

We need not reach the second and third issues raised in Woodland's appeal, nor do we find it necessary to address Nobach's cross-appeal. Instead, we hold that the district court erred when it denied Woodland's motion for judgment as a matter of law.

## III.

### A.

We review a district court's ruling on a motion for judgment as a matter of law de novo.[5] *Brown v. Bryan Cnty.*, 219 F.3d 450, 456 (5th Cir. 2000). When reviewing a district court's denial of a post-verdict Rule 50(b) motion, we "use[] the same standard to review the verdict that the district court used in first passing on the motion." *Hiltgen v. Sumrall*, 47 F.3d 695, 699 (5th Cir. 1995). Accordingly, the legal standard is whether "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1); *see also Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008) (stating that when a case "is tried by a jury[,]" as it was in this case, "a Rule 50(a) motion is a challenge to the legal sufficiency of the evidence").

### B.

On appeal, Woodland argues that the district court erred by denying its Rule 50 motion because Nobach failed to put on any evidence, direct or circumstantial, that Woodland was motivated by Nobach's religion or religious beliefs before it discharged her. Because Nobach did not introduce such

---

[5] An appellant "who wishes to appeal on grounds of insufficient evidence must make a Rule 50(b) motion for judgment as a matter of law after the jury's verdict, even when the party has previously made a Rule 50(a) motion." *Downey v. Strain*, 510 F.3d 534, 543–44 (5th Cir. 2007). In this case, Woodland filed a post-verdict Rule 50(b) motion; thus, we have a basis "to review [its] challenge to the sufficiency of the evidence." *Id.* at 544.

evidence at trial, Woodland contends that the jury could not have had a legally sufficient basis to find that Woodland discriminated against Nobach in violation of Title VII.  We agree.

Title VII makes it unlawful for an employer to discharge an individual "*because of* such individual's . . . religion."  42 U.S.C. § 2000e-2(a)(1) (emphasis added).  The Supreme Court recently provided guidance on Title VII's "because of" causation standard, noting that it is broader than the typical but-for causation standard because it requires only that the religious practice be a "motivating factor" of the employer's employment decision.  *See Abercrombie*, 135 S. Ct. at 2032.  When evaluating causation in a Title VII case, the question is not what the employer *knew* about the employee's religious beliefs.  *Id*. at 2033.  Nor is the question whether the employer *knew* that there would be a conflict between the employee's religious belief and some job duty.  *Id.*  Instead, the critical question is what *motivated* the employer's employment decision.  *Id.*

Nobach contends that she offered direct evidence of Woodland's discriminatory animus that motivated her discharge.[6]  She relies primarily on Woodland's acknowledgements that (1) it fired Nobach for not praying the Rosary with a resident and (2) her head supervisor, Mulherin, said that she did not care if performing the Rosary was against Nobach's religion and she would have fired Nobach in any event because refusing to perform the Rosary constituted insubordination.[7]

---

[6] An employee may prove intentional discrimination "through either direct or circumstantial evidence." *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001).

[7] Although Nobach does not argue the point, other circuits have held that an employer has no obligation to withdraw its termination decision under Title VII based on information supplied *after* that termination decision has been made.  *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315, 319 (3d Cir. 2008) (holding that no duty to accommodate arises under Title VII when the employee fails to inform the employer that a requirement conflicts with his or her religious beliefs); *accord Chalmers v. Tulon Co. of Richmond*, 101

No. 13-60378

We, of course, fully accept Nobach's version of her discharge as the view that most favorably supports the jury verdict. In doing so, we have carefully searched the record for evidence of such support. We simply cannot find evidence that, before her discharge, Nobach ever advised anyone involved in her discharge that praying the Rosary was against her religion. Nor can we find evidence that anyone involved in her discharge suspected that Nobach's refusal to pray the Rosary was motivated by a religious belief. *Accord id.* (holding that actual knowledge of a religious belief is not required and noting that "[a] request for accommodation, or the employer's certainty that the practice exists, may make it easier to infer motive, but is not a necessary condition of liability"). According to the record, Nobach did not even tell the assistant that she was a Jehovah's Witness. Nobach acknowledges that the only time she made any mention of her religious belief was when she told the assistant: "I can't do the Rosary with [the resident]. I'm not Catholic, and it's against my religion." Nobach has never claimed that the assistant told anyone of her reason for refusing to aid the resident. In sum, Nobach has offered no evidence that Woodland came to know of or suspect her bona-fide religious belief until after she was actually discharged.

Woodland must admit, as it does, that Nobach's failure to perform the Rosary with the resident was the factor that precipitated her discharge. If Nobach had presented any evidence that Woodland knew, suspected, or reasonably should have known the cause for her refusing this task was her conflicting religious belief—and that Woodland was motivated by this knowledge or suspicion—the jury would certainly have been entitled to reject

---

F.3d 1012, 1020 (4th Cir. 1996) ("Giving notice to co-workers [of one's religious beliefs] at the same time as an employee violates an employment requirement is insufficient to provide adequate notice to the employer and to shield the employee's conduct."); *Johnson v. Angelica Unif. Grp., Inc.*, 762 F.2d 671, 673 (8th Cir. 1985).

No. 13-60378

Woodland's explanation for Nobach's termination.  But, no such evidence was ever provided to the jury.

We hold, therefore, that a reasonable jury would not have had a legally sufficient evidentiary basis to find that Woodland intentionally discriminated against Nobach because of her religion.[8]

**IV.**

To sum up, we hold that the district court erred by not granting Woodland's Rule 50(b) motion for judgment as a matter of law because Nobach failed to put forth evidence that, before her termination, Woodland knew or suspected that her religious belief needed an accommodation, which necessarily means that there was no evidence that Nobach's religious belief was the motive for Woodland's termination decision.  Without evidence of an impressible motive in Woodland's termination decision, "a reasonable jury would not have had a legally sufficient evidentiary basis" to find for Nobach on her claim of religious discrimination under Title VII.  Accordingly, the denial of Woodland's motion for judgment as a matter of law is REVERSED, the judgment is VACATED, and the case is REMANDED for entry of judgment consistent with this opinion.

---

[8] With regard to Nobach's allegation of Woodland's failure to accommodate her religious beliefs, her claim fails for essentially the same reason—the failure to advise Woodland of her religious belief and the conflict with her job duties and Woodland's lack of knowledge or suspicion of any such conflict.

9