# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-20027

ARLEEN DELARONDE,

Plaintiff - Appellee

v.

LEGEND CLASSIC HOMES, LIMITED,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

January 18, 2018

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Southern District of Texas
USDC No. 4:14-CV-1578

Before JONES, SMITH, and PRADO, Circuit Judges.

PER CURIAM:[*]

Defendant-Appellant Legend Classic Homes, Ltd. ("Legend") appealed the district court's denial of its Rule 50(b) motion for judgment as a matter of law and the refusal to instruct the jury regarding the meaning of "similarly situated" in a Title VII employment discrimination case. For the following reasons, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.    Background

Plaintiff-Appellee Arleen Delaronde ("Delaronde") worked as a sales associate for Legend, a home builder in the Houston area, from May 2010 to April 2013.  The sales communities Legend assigns its associates vary from higher-priced to lower-priced homes, with different offerings and target markets.  The salaries of Legend's sales associates are commission-based, set at two percent of every home sale.  Under its at-will employment policy, Legend retains the right to "demote, transfer, change job duties, and change compensation at any time with or without notice and with or without cause in its sole discretion."

Delaronde was initially placed at the Legends Trace community in North Harris County ("Trace"), where she was trained by sales manager Brett Briggs ("Briggs").  In March 2011, Legend hired Maria Dorman ("Dorman") and placed her at Trace with Delaronde.  Delaronde and Dorman entered into a partnership agreement whereby they shared work and commissions from all sales made at Trace.  In its initial EEOC response, authored by Vice President of Sales and Marketing, Mark Tollefsrud ("Tollefsrud"), Legend acknowledged it was not comfortable with that partnership.  .

Although Trace was a challenged neighborhood at the time Delaronde started working, in 2011 Delaronde had doubled her income and by 2012 the community was "pretty much booming."  Delaronde became familiar with the market and developed connections with realtor contacts.   Delaronde had over $3 million in home sales in 2011, and in 2012 the Trace property realized over $9 million in net sales.

On November 20, 2012, Legend hired Marvin Bullard ("Bullard") as a sales associate and assigned him to complete training with Briggs at the corporate offices.  On December 7, 2012, Briggs told Delaronde she was being transferred from Trace to the Deerbrook Estates community ("Deerbrook") to

assist in training a newly-promoted sales counselor. Delaronde believed the assignment was temporary and that she would eventually return to Trace, as Briggs told her Deerbrook would be a one-person community once training was complete. Tollefsrud and Briggs assigned Bullard to take Delaronde's place at Trace, where Dorman was assigned to provide Bullard additional training.

The home prices in the Deerbrook community were the lowest of any Legend property. In comparison to Trace's 2013 sales volume of over $13 million, Deerbrook's total sales were just under $3 million. Delaronde struggled to make sales and sold only one home that made it to a closing. Delaronde was not provided any additional compensation for training.

Delaronde was paid $2,000 a month for three months to compensate her for the transfer and continued to receive residual commission payments for her sales at Trace. After Delaronde had trouble making sales for the three months, she asked Legend for an extension of her salary for one pay period. Despite the sales difficulties, from the time she transferred to Deerbrook until her resignation four months later, Delaronde made approximately $42,000-$43,000, which mostly consisted of residual commission payments.

Delaronde learned her transfer was permanent and realized she would not be returning to Trace in January 2013, when Briggs offered Delaronde a reassignment to the Sydney Harbour community to train sales associates there. Delaronde turned down the offer and resigned in April 2013.

Five months after her resignation, Delaronde filed an EEOC charge, claiming sex discrimination and constructive discharge. EEOC failed to act on the charge and sent Delaronde a right to sue letter. Her ensuing Title VII case was tried, resulting in a jury verdict in favor of Delaronde. The jury awarded Delaronde $150,000 in compensatory damages and $150,000 in punitive damages. The district court vacated the award of punitive damages, but upheld the compensatory damages award and denied Legend's Rule 50(b)

No. 17-20027

Motion for Judgment as a Matter of Law.  Legend timely appealed the final judgment.

## II.    Standard of Review

In reviewing a district court's denial of a post-verdict motion for judgment as a matter of law under Rule 50(b), we "use the same standard to review the verdict that the district court used in first passing on the motion." *Nobach v. Woodland Village Nursing Ctr., Inc.*, 799 F.3d 374, 377 (5th Cir. 2015) (internal quotation marks, citation, and alteration omitted).  "[T]he legal standard is whether a 'reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Id.* at 377-78 (quoting Fed. R. Civ. P. 50(a)(1)).  Granting judgment as a matter of law is appropriate only where the facts and inferences point "so strongly and overwhelmingly in the movant's favor that reasonable jurors could not reach a contrary conclusion." *Omnitech Int'l., Inc. v. Clorox Co.,* 11 F.3d 1316, 1323 (5th Cir. 1994).  This court reviews the denial of a motion for judgment as a matter of law in an "especially deferential" manner. *Flowers v. S. Reg'l Physician Svcs., Inc.,* 247 F.3d 229, 235 (5th Cir. 2001)(internal quotation and citation omitted).

A district court's refusal to provide a requested jury instruction is reviewed for abuse of discretion. *United States v. McClatchy*, 249 F.3d 348, 356 (5th Cir. 2001).

## III.    Analysis

### a.  Sex Discrimination

Legend argues it is entitled to judgment as a matter of law under Rule 50(b) because (1) Delaronde failed to prove that Legend's articulated reason for her transfer was a pretext for discrimination, and (2) Delaronde did not offer any legally sufficient evidence to show her transfer was based on her sex.

When a Title VII case has been tried on the merits, "the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* ritual is unimportant," and this court focuses on "whether the record contains evidence upon which a reasonable trier of fact could have concluded as the jury did." *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 118 (5th Cir. 1993); *see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510, 113 S. Ct. 2742, 2749 (1993) (noting the *McDonnell Douglas* framework is "no longer relevant" once the defendant has carried its burden of production). Here, there was enough evidence presented at trial – albeit largely circumstantial – from which the jury could conclude Legend engaged in illegal discrimination when it transferred Delaronde.

To begin, trial testimony established Delaronde's sales record was good, she was successful and had real estate experience. Further, the transfer to Deerbrook was adverse to her actual and potential earnings. Briggs testified Delaronde would never have made the same amount of money at Deerbrook as she did at Trace, and Delaronde herself explained the challenging clientele and credit issues in the Deerbrook area, which had the lowest home prices in the company and made sales more difficult.

Legend homes in on its argument that she did not present legally sufficient evidence that she was treated differently from similarly situated men in nearly identical circumstances. In a Title VII case, a plaintiff may show she was treated less favorably than other employees who are "similarly situated" to the plaintiff. *Lee v. Kansas City So. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). This court has required plaintiffs proffering fellow employees as comparators to demonstrate the actions at issue were taken "under nearly identical circumstances." *Id.* at 260 (internal quotation marks and citation omitted). Nevertheless, the inquiry as to which employees are considered "similarly situated" is "case-specific" and requires an analysis of "the full

variety of factors that an objectively reasonable…decisionmaker would have found relevant in making the challenged decision." *Lindquist v. City of Pasadena*, 669 F.3d 225, 234 (5th Cir. 2012) (quoting *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1203 (11th Cir. 2007)).

Our review of the record persuades us that the record contains sufficient evidence for a reasonable trier of fact to find Bullard was a similarly situated comparator who was treated more favorably than Delaronde. Delaronde's and Bullard's job titles, responsibilities, and equivalent experience were close enough for a reasonable factfinder to view Bullard as being "similarly situated." Further, the circumstances and outcomes surrounding Delaronde's and Bullard's transfers were sufficient for a reasonable factfinder to find Bullard was treated more favorably than Delaronde.

Legend's attempts to explain how it treated the plaintiff were inconsistent and could be viewed by a reasonable juror as pretextual for a discriminatory purpose. In its EEOC response and at trial, Legend variously claimed the transfer was a staffing change, a promotion, a way to dismantle the partnership between Delaronde and Dorman, or for training needs. Since pretext can be established by showing the "proffered explanation is false or unworthy of credence," *Laxton*, 333 F.3d at 578 (internal quotation marks and citation omitted), Legend's shifting reasons for transferring Delaronde furnish additional support for the verdict.

It is not this court's role simply to disagree with a jury verdict. Instead, we must uphold the verdict unless strong grounds for granting judgment as a matter of law existed. Because the record contains sufficient evidence for a reasonable jury to have found sex discrimination, the district court did not err in refusing to set aside the verdict.

### b. Constructive Discharge

We do not need to reach the issue of whether Delaronde was constructively discharged. Both parties recognized during oral argument that the constructive discharge issue is not a freestanding claim for relief; it is merely an alternative allegation of an adverse employment action that constituted illegal sex discrimination.

Because the jury's award of compensatory damages was based on Delaronde's wages and benefits from April 1, 2013 to November 18, 2014, both her discrimination and constructive discharge claims were considered in arriving at the compensatory damage award amount. By affirming the finding that Delaronde's transfer constituted illegal sex discrimination, we have a sufficient basis to affirm the jury's award of $150,000 in compensatory damages—regardless of whether we affirm or reverse the constructive discharge finding. In addition, neither party sought a remand for a new trial on damages, so we are not inclined to order one.

### c. The Jury Instruction

Legend alternatively asserts this court should grant a new trial because the district court erred in not charging the jury with Legend's proposed instruction on the definition of "similarly situated," and the charge failed adequately to describe the burden necessary to prevail on a claim of sex discrimination. Legend further contends because the district court refused its proposed instruction, the jury was not properly instructed or guided in its deliberations. During deliberations, the jury asked: "Does similarly qualified person mean: lesser or equally situated or only equally situated? Could we have more clarification on this item?" The district court's response was that the jury had "received all appropriate instructions" and the jury was to return to its deliberations.

Given a district court's "substantial latitude in crafting jury instructions," the refusal to give a [requested] jury instruction will only constitute reversible error "'if the instruction (1) was a substantially correct statement of law, (2) was not substantially covered in the charge as a whole, and (3) concerned an important point in the trial such that the failure to instruct the jury on the issue seriously impaired the [party's] ability to present a given [claim].'" *Kanida v. Gulf Coast Medical Personnel LP*, 363 F.3d 568, 578 (5th Cir. 2004) (quoting *McClatchy*, 249 F.3d at 356). A district court does not abuse its discretion if it refuses to grant a new trial on the ground that "a jury instruction, although correct, was not as clear as it could have been." *Seibert v. Jackson Cnty.*, 851 F.3d 430, 439 (5th Cir. 2017).

The jury instruction Legend proposed as to the meaning of "similarly situated" was the following:

> "Similarly situated" employees are employees who are treated more favorably in "nearly identical" circumstances. Similarly situated individuals must be "nearly identical" and must fall outside the Plaintiff's protective class—i.e., they must be male. Significantly, individuals must share the same capabilities to be considered "similarly situated." Put another way, "[e]mployees with different capabilities are not considered to be nearly identical." Consistent with that principle, individuals who are truly "similarly situated" will have the same level of experience and seniority. Proper comparators must also be contemporaneously employed at the same location as the plaintiff.

As previously discussed, "similarly situated" comparator employees in the Title VII discrimination context means employees who are "nearly identical." *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F. 3d 507, 514 (5th Cir. 2001). Legend's proposed instruction, while based on Fifth Circuit precedent, ignores the "case-specific" inquiry the Fifth Circuit has mandated,

because "[w]hat is relevant in one case might not be relevant in another." *Lindquist*, 669 F.3d at 234.

The jury was instructed: "To prove unlawful discrimination, Plaintiff must prove by a preponderance of the evidence that: 1. Defendant transferred Plaintiff and she was replaced with a similarly qualified person who was not a member of the protected class or that similarly situated employees outside the protected class were treated more favorably." The instruction did not contain an erroneous suggestion, but substantially covered Delaronde's burden of proof in the charge as a whole. In not getting into the weeds of the meaning of "substantially similar," the instruction did not misstate the law.

Furthermore, when a jury is properly instructed regarding the controlling law and counsel is able to present the jury with inferences it was permitted to make from the evidence, this court cannot conclude a party was seriously impaired in presenting its claim. *See Kanida*, 363 F.3d at 579-80 (finding no reversible error where the district court's instructions properly stated the governing law and the party was able to present an argument based on the court's instructions). Legend gave closing arguments after the district court read the charges to the jury and was not only able, but did in fact tailor its argument to fit the instructions given.

Because the district court properly instructed the jury on the controlling law regarding Delaronde's burden of proof and Legend was not seriously impaired in its ability to present its arguments, the district court did not err in refusing Legend's proposed instruction.

## IV.   Conclusion

For the foregoing reasons, the **JUDGMENT IS AFFIRMED**.

9