# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 24, 2021

Lyle W. Cayce
Clerk

No. 19-40740

Lily F. Tercero,

*Plaintiff—Appellant*,

*versus*

Texas Southmost College District,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 1:16-CV-282

Before King, Graves, and Oldham, *Circuit Judges*.
James E. Graves, Jr., *Circuit Judge*:

Dr. Lily Tercero brought procedural due-process and breach-of-contract claims against Texas Southmost College ("TSC") relating to her termination. She won at trial. But the trial court subsequently vacated the jury's verdict on her breach-of-contract claims and reduced the damages award for her procedural due-process claim to $1.

In addition to deciding whether the reduction in the procedural due-process damages was warranted, we must determine whether TSC, as an independent political subdivision, is immune from suit for breach of contract.

No. 19-40740

In deciding that question, we must first answer a more specific one: whether the state of Texas can limit the waiver of governmental immunity in a manner that prevents a federal court from hearing a state law claim that it would otherwise have supplemental jurisdiction over. We affirm in part, reverse in part, and remand for further proceedings.

I.

Appellant, Dr. Lily F. Tercero, was the president of Appellee, Texas Southmost College District, until the college's board voted to remove her from the position after a termination hearing. Tercero then filed this action in the district court. She brought, against TSC, a Fourteenth Amendment procedural due-process claim under 42 U.S.C. § 1983 and Texas state law breach-of-contract claims, which alleged that TSC (1) owed her the balance of her salary and benefits remaining on her employment contract because it terminated her without good cause; and (2) violated her contractual right to certain processes, including the right to cross-examine adverse witnesses and present exculpatory evidence.

The district court denied summary judgment on Tercero's breach-of-contract claims and her procedural due-process claim based on the termination hearing itself.[1] In doing so, the district court concluded that TSC was not entitled to governmental immunity on the breach-of-contract claims.

A jury then found that TSC breached Tercero's employment contract and deprived her of procedural due process. It awarded her $674,878.66 in damages on her breach-of-contract claims and $12,500,000 in damages on

---

[1] The district court dismissed claims brought against TSC trustees in their official and individual capacities on summary judgment. The district court also dismissed two claims brought against TSC. One claim was brought under the Texas Open Meetings Act and the other was a procedural due-process claim that Tercero's termination-hearing notice was inadequate.

No. 19-40740

her due-process claim for "[d]iminished earning capacity, lost career and business opportunities, loss of reputation, humiliation, embarrassment, inconvenience, and mental and emotional anguish and distress." After trial, the district court awarded Tercero $117,685.67 in attorneys' fees from TSC in connection with these claims.

Post-judgment, TSC filed (1) a motion to dismiss Tercero's breach-of-contract claims—arguing that TSC is entitled to governmental immunity on the claims—and, alternatively, a renewed motion for judgment as a matter of law on the breach-of-contract claims; (2) a renewed motion for judgment as a matter of law on Tercero's procedural due-process claim and the damages awarded on the claim; and (3) a motion for a new trial or remittitur on the damages awarded on the due-process claim.

The district court dismissed Tercero's breach-of-contract claims for lack of jurisdiction, concluding that TSC was entitled to Eleventh Amendment immunity on these claims. It also granted the renewed motion for judgment as a matter of law on the due-process damages award only, holding that Tercero was entitled to nominal damages because, although sufficient evidence supported the jury's finding of a due-process violation, there was an absence of sufficient evidence showing that Tercero's injuries were caused by the due-process deprivation. Finally, the court conditionally granted a new trial or remittitur and vacated its prior award of attorneys' fees. Tercero timely appealed contesting the district court's post-judgment rulings.

## II.

Tercero argues that the district court erred in dismissing its Texas state law breach-of-contract claims because neither Eleventh Amendment immunity nor governmental immunity shields TSC. "We review a ruling on a [Federal Rule of Civil Procedure] 12(b)(1) motion to dismiss for lack of

subject matter jurisdiction de novo, applying the same standards as the district court." *Rodriguez v. Christus Spohn Health Sys. Corp.*, 628 F.3d 731, 734 (5th Cir. 2010) (internal quotation marks, italics, and citations omitted). The interpretation of a statute is a question of law we also review de novo. *See Motient Corp. v. Dondero*, 529 F.3d 532, 535 (5th Cir. 2008).

## A.

The first issue is that, contrary to the district court's findings, TSC never argued that it is entitled to sovereign immunity under the U.S. Constitution. Instead, it argued that it is entitled to governmental immunity under state law. The U.S. Constitution affords two types of immunities to states. The one the district court invoked—"Eleventh Amendment immunity"—applies to suits between a state and a citizen of another state. *See* U.S. CONST. amend. XI. The other is state sovereign immunity, which generally prohibits private suits against states (including the plaintiff's home state). *See Franchise Tax Bd. of Calif. v. Hyatt*, 139 S. Ct. 1485, 1496 (2019) ("The sovereign immunity of the States, we have said, neither derives from, nor is limited by, the terms of the Eleventh Amendment. Consistent with this understanding of state sovereign immunity, this Court has held that the Constitution bars suits against nonconsenting States in a wide range of cases."*)*.

TSC is entitled to neither form of constitutional immunity. TSC is a junior college district created pursuant to the Texas Education Code. *See* TEX. EDUC. CODE § 130.204. "Texas junior college districts[—such as TSC—]are independent political subdivisions[.]" *Hander v. San Jacinto Jr. Coll.*, 522 F.2d 204, 205 (5th Cir. 1975) (per curiam) (internal quotation marks and citation omitted). "The bar of the Eleventh Amendment to suit in federal courts extends to States and state officials in appropriate circumstances, but does not extend to counties and similar municipal

corporations . . . or other political subdivision[s.]" *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (internal citations omitted). Similarly, state "[s]overeign immunity protects the State [of Texas], state agencies, and their officers" not "subdivisions of the State[.]" *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 655 n.2 (Tex. 2008). Accordingly, as a political subdivision, TSC could not, and does not, invoke constitutional sovereign immunity.

Texas governmental immunity, unlike constitutional sovereign immunity, applies to the state's political subdivisions, including junior college districts such as TSC. *See id.* (stating that "governmental immunity protects subdivisions of the State, including municipalities and school districts"); *see also* Tex. Educ. Code § 130.122(f) ("Each junior college district . . . is hereby declared to be, and constituted as, a school district within the meaning of Article VII, Section 3, of the Texas Constitution.").

"In Texas, governmental immunity has two components: immunity from liability, which bars enforcement of a judgment against a governmental entity, and immunity from suit, which bars suit against the entity altogether." *Tooke v. City of Mexia*, 197 S.W.3d 325, 332 (Tex. 2006). "[G]overnmental immunity from suit defeats a trial court's jurisdiction[.]" *Morgan v. Plano Indep. Sch. Dist.*, 724 F.3d 579, 582 (5th Cir. 2013). "A political subdivision enjoys governmental immunity from suit to the extent that immunity has not been abrogated by the Legislature." *Id.* at 582 n.4 (quoting *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 324 (Tex. 2006)). "[I]mmunity is waived only by clear and unambiguous language[.]" *Tooke*, 197 S.W.3d at 328–29.

The Texas Legislature has abrogated governmental immunity owed to local governmental entities such as TSC. Texas Local Government Code § 271.152 states: "A local governmental entity that is authorized by statute or

the constitution to enter into a contract and that enters into a contract subject to this subchapter waives sovereign immunity to suit for the purpose of adjudicating a claim for breach of the contract . . . ."[2] One catch: Texas Local Government Code § 271.156 says that the "subchapter does not waive immunity to suit in federal court."[3]

But in the absence of constitutional sovereign immunity, a state cannot bar a federal court from exercising jurisdiction over claims that state courts would recognize and enforce. *See Railway Co. v. Whitton's Adm'r*, 80 U.S. (13 Wall.) 270 (1871).[4] While a state can condition its waiver of

---

[2] Notably, while § 271.152 ostensibly "waives sovereign immunity," this language is meant to encompass governmental immunity. *See Tooke*, 197 S.W.3d at 342 (discussing "sections 271.151–.160 of the Local Government Code," which "waiv[ed] local governmental entities' immunity from suit for breach of contract under certain circumstances"); Tex. Loc. Gov't Code § 271.151(3) (defining "[l]ocal government entity" as "a political subdivision of this state," which includes "junior college district[s]").

[3] Several district court decisions have dismissed claims based on this provision. *See Olford v. City of Hous.*, No. H-17-3421, 2018 WL 3208196, at *7–8 (S.D. Tex. June 29, 2018); *Smith v. Hous. Indep. Sch. Dist.*, 229 F. Supp. 3d 571, 576 (S.D. Tex. 2017); *Scherff v. S. Tex. Coll.*, No. 7:16-CV-658, 2017 WL 3783042, at *7 (S.D. Tex. Aug. 29, 2017); *Nationwide Pub. Ins. Adjusters, Inc. v. Edcouch-Elsa Indep. Sch. Dist.*, 913 F. Supp. 2d 305, 310–11 (S.D. Tex. 2012).

[4] In *Whitton's Administrator*, the Supreme Court instructed that a state right

> cannot be withdrawn from the cognizance of such Federal court [having jurisdiction over the parties] by any provision of State legislation that it shall only be enforced in a State court. The statutes of nearly every State provide for the institution of numerous suits, such as for partition, foreclosure, and the recovery of real property in particular courts and in the counties where the land is situated, yet it never has been pretended that limitations of this character could affect, in any respect, the jurisdiction of the Federal court over such suits where the citizenship of one of the parties was otherwise sufficient. Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a

governmental immunity on jurisdictional prerequisites like pre-suit notice requirements, it cannot condition its waiver of immunity on a suit being brought in any forum other than a federal forum. *Compare Morgan*, 724 F.3d at 588, *with United Disaster Response, LLC v. Omni Pinnacle, LLC,* 511 F.3d 476, 481 (5th Cir. 2007). Our decision in *United Disaster Response* stands for the proposition that political subdivisions that have waived governmental immunity, and that do not enjoy constitutional immunity, can be sued in federal courts under diversity jurisdiction without regard to state statutory provisions to the contrary. *See* 511 F.3d at 481 (citing *In re Allied-Signal, Inc.*, 919 F.2d 277, 280 n.4 (5th Cir. 1990)).

The same rule applies to cases like this one where the federal court is exercising supplemental jurisdiction as opposed to diversity jurisdiction. Federal jurisdiction cannot be defeated by a state statute limiting the forum in which the action must be brought. *Duchek v. Jacobi*, 646 F.2d 415, 419, 419 n.4 (9th Cir. 1981) (citing *United States v. Slate's Estate*, 304 F. Supp. 380, 382, *aff'd*, 425 F.2d 1208 (5th Cir. 1970)). In determining jurisdiction, federal courts must look to the sources of their power, Article III of the United States Constitution and congressional statutory grants of jurisdiction, not to the acts of state legislatures. *Id.* at 419. "However extensive their power to create and define substantive rights, the states have no power directly to enlarge or contract federal jurisdiction." *Id.* "This rule is a consequence of the exclusive power of Congress to control the jurisdiction of the federal courts and the Supremacy Clause implications of a state's suggestion that it might somehow (even indirectly) provide otherwise."

---

case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.

80 U.S. (13 Wall.) at 285–86.

No. 19-40740

*United States ex rel. Galmines v. Novartis Pharm. Corp.*, No. CIV.A. 06-3213, 2013 WL 5924962, at *4 (E.D. Pa. Nov. 5, 2013).

Here, the Texas Legislature abrogated TSC's governmental immunity such that Tercero could bring state law breach-of-contract claims against TSC. The argument that the Texas Legislature attempted to limit federal jurisdiction over these claims is unavailing.

## B.

TSC requests, in its response on appeal, that this court affirm the dismissal of the breach-of-contract claims on the alternate ground that there was insufficient evidence to support the jury verdict and damages award. But the district court did not consider these arguments, which were raised in TSC's renewed motion for judgment as a matter of law, because it dismissed the breach-of-contract claims for lack of jurisdiction.

We are not required to address TSC's alternative arguments, and we decline to do so here. *Breaux v. Dilsaver*, 254 F.3d 533, 538 (5th Cir. 2001) (citing *Dandridge v. Williams*, 397 U.S. 471, 475 n.6 (1970)). Therefore, the district court's dismissal of Tercero's breach-of-contract claims is reversed, the jury's verdict on those breach-of-contract claims reinstated, and the case remanded to the district court for consideration of TSC's alternative arguments regarding whether sufficient evidence supports Tercero's breach-of-contract claims.

## III.

Tercero contends that the district court erred in granting, in part, TSC's Rule 50(b) motion for judgment as a matter of law on the due-process violation damages and reducing the jury's award on the due-process violation to the nominal sum of $1.

A.

"We review a district court's ruling on a motion for judgment as a matter of law de novo." *Nobach v. Woodland Vill. Nursing Ctr., Inc.*, 799 F.3d 374, 377 (5th Cir. 2015). "When reviewing a district court's denial of a post-verdict Rule 50(b) motion, we use the same standard to review the verdict that the district court used . . . ."[5] *Id.* (internal quotation marks, brackets, and citation omitted). "Accordingly, the legal standard is whether a 'reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Id.* at 377–78 (quoting FED. R. CIV. P. 50(a)(1)).

"In resolving such challenges, we draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the nonmoving party." *Foradori v. Harris*, 523 F.3d 477, 485 (5th Cir. 2008). "A post-judgment motion for judgment as a matter of law should only be granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005) (internal quotation marks and citation omitted).

---

[5] "[C]ourts [generally] prohibit parties from using a Rule 50(b) motion to assert a ground that was not included in [a pre-verdict Federal Rule of Civil Procedure 50(a)] motion." *Puga v. RCX Sols., Inc.*, 922 F.3d 285, 290 (5th Cir. 2019) (internal quotation marks, brackets, and citation omitted); *cf. Montano v. Orange Cnty., Tex.*, 842 F.3d 865, 877 (5th Cir. 2016) ("[N]ewly-presented issues in a Rule 50(b) motion are reviewed *de novo* on appeal when the nonmovant fails in the district court to object to their not having been presented in a Rule 50(a) motion."). TSC orally moved for judgment as a matter of law pre-verdict and raised the same argument being litigated here then and in its Rule 50(b) motion.

B.

The jury found that Tercero suffered diminished earning capacity, loss of career and business opportunities, loss of reputation, humiliation, embarrassment, inconvenience, and mental and emotional anguish and distress as a result of the due-process violation and awarded $12,500,000 in damages.  If Tercero's injuries "were caused not by the pretermination procedural due-process violation, but rather were caused by the discharge itself" or some other event—as the district court determined—then Tercero would be entitled to recover only nominal damages.  *Wilson v. Taylor*, 658 F.2d 1021, 1033 (5th Cir. Unit B Oct. 1981); *see also Carey v. Piphus*, 435 U.S. 247, 267 (1978) (limiting possible nominal damages to no more than $1).

Tercero does not specify which injuries she claims were caused by the due-process violation, stating that "[t]here is sufficient evidence of at least some damages caused by the denial of procedural due process[.]" Nonetheless, Tercero does not clearly argue that any injuries flowed from her improper pretermination hearing, which is what her due-process violation theory was based on at trial.

Tercero's opening brief cites three pieces of testimony to show that there was sufficient evidence to support the jury's verdict.  First, Tercero testified that, after her employment with TSC ended, she was a finalist for a new position.  She testified that "the accusations that were made against me [at TSC] came up . . . and I have no doubt that they didn't pick me because of what they had read."  However, Tercero only speculates that the accusations were the reason she did not receive the position; does not name, explain, or describe what position she had applied for or what its attendant qualifications were; and concedes that she was a finalist for the position.  *See Univ. Computing Co. v. Mgmt. Sci. Am., Inc.*, 810 F.2d 1395, 1402 (5th Cir. 1987) (concluding that opinion testimony is "insufficient as a matter of law

to establish causation" and "any inference drawn therefrom is merely speculative" where the testimony "is no more than a well-informed guess"); *see also id.* ("Legal factfinding cannot be performed by hunch.").

Second, Tercero quotes the following exchange between TSC trustee Ed Rivera and her counsel:

> Q.   Did you read in the newspaper the articles about [Tercero's] upcoming hearing and so forth?
>
> A.   Yes.
>
> Q.   And from what you read in those newspapers, were you able to–and did you read the quotes from the Board members in the paper?
>
> A.   Yes.
>
> Q.   Did you form an opinion whether or not she had any fair shot at keeping her job when she gets to [the pretermination] hearing?
>
> . . .
>
> A.   . . . I thought she was a goner. . . . [T]here's just no way that–that you can recover from not only board scrutiny, but also public scrutiny.

This testimony, like the previous testimony, does not connect the procedural due-process violation relating to the termination hearing to any of the injuries at issue. *See Univ. Computing Co.*, 810 F.2d at 1402.

Finally, Tercero cites to testimony she gave about her reaction to public notice about her potential termination from TSC and a newspaper article about the then-upcoming termination hearing. Specifically, Tercero testified that the notice was "hurtful," and that the notice and newspaper article made her feel "very hurt." Tercero also testified that the notice and newspaper article made her feel "embarrassed" and "humiliated," but the district court implicitly sustained an objection to these statements.

No. 19-40740

Tercero's testimony was about events that preceded her termination hearing. And Tercero does not challenge the district court's conclusion on summary judgment that the pre-hearing notice—which seems to have prompted the newspaper article—did not violate her due-process rights. Thus, Tercero has not shown that any injury she suffered in connection with the notice and newspaper article was caused by the due-process violation at issue, i.e., issues with the hearing itself.[6]

Consequently, we affirm the district court's grant of judgment as a matter of law on the due-process violation damages and reduction of the jury's award of $12,500,000 to the nominal amount of $1.[7]

IV.

Tercero argues that this court should reinstate her attorneys' fees award if the court reinstates the damages award on her breach-of-contract claims. The district court had awarded Tercero attorneys' fees under Texas Civil Practice and Remedies Code § 38.001 and 42 U.S.C. § 1988 for succeeding on her breach-of-contract and due-process claims. In deciding TSC's post-judgment motions, the district court determined that Tercero was not entitled to attorneys' fees because she had not ultimately prevailed

---

[6] Because there is no causal link between the injuries Tercero suffered and the due-process violation, the district court's conditional grant of TSC's Federal Rule of Civil Procedure 50(c) motion for a new trial or remittitur on the due-process damages will not be effectuated, and we need not provide the district court guidance regarding further proceedings on the motion. Thus, any issue regarding the motion for a new trial or remittitur is moot.

[7] In the alternative, the district court concluded that—"even if Tercero did present evidence that her damages result solely from the due-process violation"—there was no legally sufficient evidence to support the jury's finding of employment and mental-anguish damages. Tercero also contests these conclusions, but we need not reach them.

on her breach-of-contract claims and was entitled solely to nominal damages on her due-process claim.

"We review the district court's denial of attorney's fees for abuse of discretion." *Davis v. Credit Bureau of the S.*, 908 F.3d 972, 975 (5th Cir. 2018) (per curiam). "A district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (internal quotation marks and citation omitted).

The district court abused its discretion in vacating Tercero's attorneys' fees award based on her breach-of-contract claims because—as explained above—it erroneously determined that TSC is entitled to Eleventh Amendment immunity on those claims. The district court's award of attorneys' fees was, however, based on Tercero's attorneys' work on both the breach-of-contract and due-process claims. It did not distinguish between work done on one claim versus the other. We therefore reverse the district court's vacatur of the portion of the attorneys' fees award based on the breach-of-contract claims and remand for the district court to address TSC's alternative arguments regarding those claims and to determine whether Tercero is entitled to attorneys' fees and in what amount.

AFFIRMED in part; REVERSED in part; and REMANDED for further proceedings consistent with this opinion.