# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 3, 2022

Lyle W. Cayce
Clerk

No. 20-50671

Johnny Thomas, *a Bankruptcy Trustee of* Performance Products, Inc.; Carolyn Pearcy, *in her capacity as Trustee of the* Pearcy Family Trust, *Trustee of the* Pearcy Marital Trust, *and Executor of the* Estate of James Pearcy,

*Plaintiffs—Appellees*,

*versus*

Lou Ann Hughes; Advanced Probiotics, L.L.C.; Performance Probiotics, L.L.C.,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:16-CV-951

Before Clement, Haynes, and Wilson, *Circuit Judges*.
Cory T. Wilson, *Circuit Judge*:

A federal jury found that Lou Ann Hughes fraudulently transferred assets, that Hughes and Performance Probiotics, LLC misappropriated trade secrets, that Hughes was personally liable for the actions of her company through corporate veil-piercing, and that Hughes breached her fiduciary duty as an attorney. The jury awarded over $1.4 million in compensatory damages and $1.2 million in exemplary damages. The district court then entered its

No. 20-50671

final judgment, which confirmed the jury's damages awards, enjoined Hughes from continuing to misappropriate Pearcy's trade secrets, and ordered Hughes to disgorge compensation received from Performance Probiotics.

On appeal, Hughes challenges the district court's evidentiary rulings, final judgment, attorney's fees award, and denial of post-judgment relief on various grounds. We slightly MODIFY the district court's final judgment to prevent the possibility of double recovery. Otherwise, we AFFIRM.

## I.

## A.

In 1993, James Pearcy founded Performance Products, Inc. ("PPI"), which developed and sold probiotic supplements for livestock. In 2006, Pearcy decided to sell PPI to his attorney, Lou Ann Hughes. The parties executed an agreement under which Hughes paid Pearcy $400,000 for the stock of PPI and $50,000 for a non-compete agreement.

Alongside the sale agreement, PPI (now controlled by Hughes) agreed to pay Pearcy licensing royalties for the use of his proprietary formulations. Specifically, PPI agreed to pay Pearcy fourteen percent of net sales up to a total payment of $1,350,000 over five years. The licensing agreement also provided that at the end of the five-year period in 2011, PPI would have the option to purchase Pearcy's formulas for $100,000.

But PPI did not fully pay the royalties owed to Pearcy. As a result, in July 2007 Pearcy sued both Hughes and PPI in state court in Comal County, Texas. *See Hughes v. Pearcy*, No. 03-10-319-CV, 2014 WL 7014353, at *1 (Tex. App.—Austin Dec. 8, 2014, pet. denied) (mem. op.). In February 2010, the Comal County jury returned a verdict in Pearcy's favor. The jury found that PPI had breached the licensing agreement, that PPI had

misappropriated Pearcy's trade secrets, and that Hughes had breached her fiduciary duty to Pearcy. The jury awarded Pearcy $714,010 on his claims against PPI, awarded $1.00 on his claim against Hughes, and found that Pearcy was entitled to $163,644 for his attorney's services.

The state trial court confirmed the jury's verdict and entered a $995,847.11 judgment against PPI, consisting of the $714,010 damages award, $163,644 in attorney's fees, and $118,193.11 in prejudgment interest (the "Comal County judgment"). Hughes and PPI appealed the Comal County judgment, posting a $129,816.54 supersedeas bond. The Texas court of appeals affirmed the judgment in 2014, and the Texas Supreme Court denied review in 2015. *See id.* Although Pearcy received the supersedeas bond, PPI never paid the remaining balance of the judgment. In an effort to collect, Pearcy set a hearing on his motion to compel post-judgment discovery for January 27, 2016. One day before the scheduled hearing, PPI filed for bankruptcy.

Following the parties' agreement in 2006, Hughes had formed an entity called Performance Products International, LLC. In February 2010, six days after the Comal County jury returned its verdict, Hughes filed an Assumed Name Certificate with the Texas Secretary of State's office, stating that Performance Products International, LLC would be conducting business under the assumed name "Performance." At the time the state court entered judgment against PPI, this entity did not have any assets. But in September 2010, while the Comal County judgment was pending appeal, Hughes changed the name of Performance Products International, LLC to Performance Probiotics, LLC. Performance Probiotics then obtained a license to sell and distribute commercial feed for livestock. In January 2012, Hughes ceased selling products through PPI and began selling them through Performance Probiotics instead.

No. 20-50671

## B.

In September 2016, Pearcy[1] and Johnny Thomas, PPI's Bankruptcy Trustee, filed this lawsuit in federal court against Hughes, Performance Probiotics, and another entity Hughes had created, Advanced Probiotics International, LLC ("API").  In their complaint, the plaintiffs alleged that Hughes, Performance Probiotics, and/or API had continued to misappropriate Pearcy's trade secrets.  The plaintiffs also alleged that Hughes and her LLCs had fraudulently transferred PPI's assets in violation of the Texas Uniform Fraudulent Transfer Act ("TUFTA") and 11 U.S.C. §§ 542, 544, and 548.  The plaintiffs sought to pierce the corporate veil, alleging that Hughes had used the entities to commit fraud.  Finally, Thomas alleged that Hughes breached her fiduciary duty to PPI.

The case proceeded to a jury trial in October 2019.  After Pearcy and Thomas presented their case, Hughes made an oral motion for judgment as a matter of law, which the district court denied.  Hughes re-urged her initial motion after presenting her case and it was, again, denied.

The jury returned a verdict in favor of Pearcy and Thomas.  It found that Hughes had fraudulently transferred PPI's assets to defraud Pearcy in violation of TUFTA, that Hughes and Performance Probiotics had misappropriated Pearcy's trade secrets, that Hughes could be held personally liable for the actions of her company through veil-piercing, and that Hughes had breached her fiduciary duty to PPI.  The jury awarded Pearcy

---

[1] James Pearcy died in 2017.  His wife, Carolyn Pearcy, was substituted as plaintiff in her capacities as Executor of James's estate and Trustee of the Pearcy Family Trust and the Pearcy Marital Trust.

4

$1,419,724.37 plus interest[2] in actual damages (derived from the amount then due under the Comal County judgment) and $1.2 million in exemplary damages.

After the jury verdict, the district court entered a final judgment. In it, the district court confirmed the jury's compensatory and punitive damages awards, ordered Hughes to disgorge $859,490 in compensation from Performance Probiotics because of her breach of fiduciary duty to PPI, enjoined Hughes and Performance Probiotics from using Pearcy's trade secrets until they had fully satisfied the judgment, and held Hughes and Performance Probiotics jointly and severally liable for "all relief granted" in this case and "all amounts due and payable under the [Comal County] judgment." The final judgment also specified that the district court would retain jurisdiction over API in case Hughes transferred any assets to that entity.

Hughes filed a renewed motion for judgment as a matter of law or, alternatively, for a new trial. The district court denied that motion and subsequently awarded Pearcy and Thomas $380,502 in attorney's fees and $28,680.74 in expenses. Thereafter, Pearcy and Thomas applied for a charging order, seeking to charge Hughes's membership interest in M. G. & Sons, a single member LLC she owned, and to prevent Hughes and M. G. & Sons's from transferring certain assets without court leave. Before any order issued on Pearcy and Thomas's application, Hughes timely appealed the underlying judgment.[3]

---

[2] The jury awarded interest on the principal amount accruing each day between the jury's verdict and the entry of judgment. Thus, by the time the district court entered its final judgment, the compensatory damages award totaled $1,442,580.06.

[3] Following Hughes's notice of appeal, the district court granted Pearcy and Thomas's application for a charging order. Thereafter, Hughes separately appealed that

No. 20-50671

## II.

Hughes raises nine distinct issues on appeal: (1) whether the district court properly excluded certain testimony relating to her motivations for ceasing to operate PPI; (2) whether the evidence was sufficient to sustain the jury's verdict on Pearcy's misappropriation claim; (3) whether the evidence was sufficient to sustain the jury's verdict on Thomas's breach of fiduciary duty claim; (4) whether the evidence was sufficient to sustain the jury's verdict on Pearcy's and Thomas's TUFTA claims; (5) whether the evidence was sufficient to sustain the jury's decision to pierce the corporate veils of PPI and Performance Probiotics; (6) whether the district court's judgment authorizes impermissible double recovery; (7) whether the district court erred by retaining jurisdiction over API; (8) whether the district court abused its discretion by denying Hughes's motion for a new trial; and (9) whether the district court abused its discretion in its award of attorney's fees and costs to Pearcy and Thomas. We address each issue in turn.[4]

## III.

Hughes first contends that the district court erred by limiting her testimony about her motivations for ceasing to operate PPI. "We review evidentiary rulings for abuse of discretion. A district court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Barnes*, 979 F.3d 283, 300 (5th Cir. 2020) (internal quotation marks and citations omitted).

---

order; we address its validity in a companion opinion. *See Thomas v. Hughes*, No. 20-50827, --- F.4th ---- (5th Cir. Mar. 3, 2022).

[4] Hughes raised issues 2–5 and 7 in her initial and post-trial motions for judgment as a matter of law under Federal Rules of Civil Procedure 50(a) and 50(b). She raised issue 6 in her Rule 50(b) motion. We address this set of issues under that framework in Part IV of this opinion.

6

Even if the district court abuses its discretion, "[a] reversal will not be warranted unless the defendant shows 'that the district court's ruling caused [her] substantial prejudice.'" *Id.* (quoting *United States v. El-Mezain*, 664 F.3d 467, 494 (5th Cir. 2011)).

Hughes sought to testify that PPI's Australian and Mexican distributors had informed her that PPI's products' bacteria levels did not match their labels, and that Canadian authorities had informed her that PPI had been illegally importing its products into Canada. The district court excluded this testimony as hearsay. On appeal, Hughes contends that this was error because the testimony was not offered to prove the truth of the matter asserted; it was offered to show her motive and intent—specifically, that she ceased PPI's operations because of foreign concerns, not to prevent Pearcy from collecting on the Comal County judgment.

We need not consider the merit of Hughes's contention on this point because, in any event, she cannot show that any alleged error was prejudicial. *See United States v. Sanfilippo*, 581 F.2d 1152, 1155 (5th Cir. 1978). The district court permitted Hughes to testify extensively about her reasons for shutting down PPI. Hughes testified that she "had come to believe that there had been some events in various foreign countries that put the viability of [PPI] at risk." She elaborated that she "had reason to believe that unregistered products had been sent to Australia," "came to believe that there were issues, serious concerns about continuing to sell product [in Mexico]," and "had concern that [PPI] would never be allowed to sell [products] in Canada." Because "the essence of [Hughes's] desired evidence [was] before the jury, any harm in the original exclusion was eliminated." *Id.* Therefore, we find no abuse of discretion in the district court's exclusion of Hughes's testimony.

Hughes also sought to testify regarding Pearcy's alleged misrepresentation of "discrete facts" pertaining to PPI's products and their labels. The district court excluded this testimony on grounds of collateral estoppel and res judicata, finding that Pearcy's "[a]lleged misrepresentations were a key part of [Hughes's]" counterclaim for negligent misrepresentation in the Comal County lawsuit. On appeal, Hughes asserts that this was error because neither res judicata nor collateral estoppel apply, and because her beliefs as to what Pearcy "did wrong when he ran the company" were critical to explaining "her intentions in activating [Performance] Probiotics and shutting down PPI."

When addressing "the collateral estoppel effects of a prior state court determination, we [apply] the state's law of collateral estoppel." *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1166 (5th Cir. 1981). "The doctrine of collateral estoppel or issue preclusion is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues." *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). For the doctrine to apply, a party "must establish that (1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Id.*

All three requirements are met here. First, the issue of whether Pearcy misrepresented facts concerning PPI's products was fully and fairly litigated in the Comal County lawsuit. In that action, Hughes asserted a counterclaim against Pearcy for negligent misrepresentation. After the Comal County jury found that Pearcy had not made any misrepresentations to Hughes, the trial court entered a judgment denying Hughes's counterclaim. Second, Pearcy's alleged misrepresentations, or lack thereof, were obviously essential to the Comal County judgment denying the

No. 20-50671

counterclaim. Finally, the parties were cast as adversaries in the Comal County lawsuit and maintain their respective litigation positions in this case. We find no error in the district court's ruling that Hughes was collaterally estopped from testifying as to any alleged misrepresentation in this case.

## IV.

Hughes next contends that the district court erred by denying her renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). She raises several challenges to the sufficiency of the evidence adduced at trial. Specifically, she asserts that there was insufficient evidence to support the jury's verdict against her for misappropriation of trade secrets, breach of fiduciary duty, fraudulent transfer, and veil-piercing, as well as the jury's award of damages under these theories.

"A motion for judgment as a matter of law . . . in an action tried by a jury is a challenge to the legal sufficiency of the evidence supporting the jury's verdict." *Harrington v. Harris*, 118 F.3d 359, 367 (5th Cir. 1997) (internal quotations and citation omitted). "We review a district court's ruling on a motion for judgment as a matter of law de novo." *Nobach v. Woodland Vill. Nursing Ctr., Inc.*, 799 F.3d 374, 377 (5th Cir. 2015). "[W]e use[ ] the same standard to review the verdict that the district court used in first passing on the motion." *Id.* (internal quotation marks and citation omitted). That standard is "whether 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue.'" *Id.* at 377–78 (quoting Fed. R. Civ. P. 50(a)(1)). "A post-judgment motion for judgment as a matter of law should only be granted when the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict." *Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291, 299 (5th Cir. 2021) (quoting *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 475 (5th Cir. 2005)).

No. 20-50671

Special argument-forfeiture rules apply in this context. To preserve an issue for appeal, the party moving for judgment as a matter of law must raise the issue in her post-trial motion under Rule 50(b)—and, to properly raise an issue in a Rule 50(b) motion, the movant must have already raised it in her Rule 50(a) motion during the trial. *OneBeacon Ins. Co. v. T. Wade Welch & Assocs.*, 841 F.3d 669, 676, 680 (5th Cir. 2016) (noting that this court "lack[s] power to address a claim not properly raised in a Rule 50(b) motion"); *see also Arsement v. Spinnaker Expl. Co., LLC*, 400 F.3d 238, 247 (5th Cir. 2005).

## A.    *Misappropriation of Trade Secrets*

Under Texas law, the misappropriation of a trade secret "is established by showing: (a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff." *Spear Mktg., Inc. v. BancorpSouth Bank*, 791 F.3d 586, 600 (5th Cir. 2015) (quoting *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013)).[5] If a plaintiff establishes these elements, then relief "may include damages, injunctive relief, or both." *IBP, Inc. v. Klumpe*, 101 S.W.3d 461, 472 (Tex. App.—Amarillo 2001, pet. denied); *accord Mabrey v. SandStream, Inc.*,

---

[5] These elements are the basis of a misappropriation claim under Texas common law. The Texas Uniform Trade Secrets Act ("TUTSA"), enacted on September 1, 2013, preempts common law claims for misappropriation. Tex. Civ. Prac. & Rem. Code Ann. § 134A.007(a) ("[T]his chapter displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret."). But "[a] misappropriation of a trade secret made before and a continuing misappropriation beginning before [September 1, 2013] are governed by the law in effect immediately before [September 1, 2013], and that law is continued in effect for that purpose." Adoption of The Uniform Trade Secrets Act, 2013 Tex. Sess. Law Serv. Ch. 10 (S.B. 953) § 3. Because Pearcy's claim is based on "a continuing misappropriation" that originated prior to September 1, 2013, it is not preempted by TUTSA and we thus apply Texas common law.

No. 20-50671

124 S.W.3d 302, 310 (Tex. App.—Fort Worth 2003, no pet.).  Exemplary damages are also available "if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a).

Hughes asserts there was insufficient evidence to establish that Pearcy had any trade secrets or that Hughes and Performance Probiotics improperly used any of Pearcy's trade secrets.  But Hughes did not raise these challenges in her oral Rule 50(a) motion at trial.  Instead, Hughes "move[d] for [a] directed verdict on the misappropriation of trade secrets [claim] on the ground[] that there [was] no evidence of an appropriate measure of damages for that cause of action," an argument she renewed in her Rule 50(b) motion and likewise urges here.  Because Hughes did not challenge the existence of a trade secret or improper use in her initial Rule 50(a) motion, those issues were not properly raised in her post-trial Rule 50(b) motion.  We therefore decline to address them on appeal.  *See OneBeacon Ins. Co.*, 841 F.3d at 680.[6] We discuss her preserved issue regarding the measure of damages next, though we conclude it lacks merit.

---

[6] Irrespective of forfeiture, Hughes's assertions fail.  First, Hughes is otherwise barred from challenging the existence of a trade secret because she stipulated at trial that she would "not argue to the jury that Jay Pearcy did not possess any trade secrets in the combination or proportions of ingredients in his product formulations."  Regarding improper use, the parties stipulated that Hughes had breached the licensing agreement by refusing to pay royalties, and there was testimony that Pearcy's products form the basis of the products sold by Hughes.  Thus, there was evidence from which a reasonable jury could have concluded that Hughes improperly used Pearcy's trade secrets to enrich herself.  *See Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 877 (5th Cir. 2013).

No. 20-50671

### 1.     Compensatory Damages

On the verdict form, the jury was instructed that, if it concluded that Hughes and Performance Probiotics had misappropriated Pearcy's trade secrets, it should consider "[t]he current amount due under the Comal County judgment" as the measure of actual damages.  Accordingly, the jury awarded Pearcy that amount—$1,419,724.37—in actual damages.  On appeal, Hughes challenges the use of the Comal County judgment as the measure for Pearcy's actual damages.

This court "review[s] a challenge to the district court's jury instructions 'under an abuse of discretion standard, affording the trial court substantial latitude in describing the law to the jurors.'"  *HTC Corp. v. Telefonaktiebolaget LM Ericsson*, 12 F.4th 476, 483 (5th Cir. 2021) (quoting *Jimenez v. Wood Cnty.*, 660 F.3d 841, 845 (5th Cir. 2011) (en banc)).  "To show reversible error, the party challenging the instruction 'must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations.'"  *Young v. Bd. of Supervisors*, 927 F.3d 898, 904 (5th Cir. 2019) (quoting *F.D.I.C. v. Mijalis*, 15 F.3d 1314, 1318 (5th Cir. 1994)).  We "will not reverse unless the instructions taken as a whole do not correctly reflect the issues and law."  *United States v. McKinney*, 53 F.3d 664, 676 (5th Cir. 1995).

The Texas Supreme Court has held that "[a] 'flexible and imaginative' approach is applied to the calculation of damages in misappropriation-of-trade-secrets cases."  *Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 710 (Tex. 2016) (quoting *Univ. Computing Co. v. Lykes-Youngstown Corp.*, 504 F.2d 518, 538 (5th Cir. 1974)).  Under this approach, damages "can therefore take several forms, including the value of the plaintiff's lost profits . . . and a reasonable royalty."  *Berry-Helfand*, 491

12

S.W.3d at 711. "[D]amages may be ascertained with precision" when "the parties previously agreed on the value" of the relevant trade secrets. *Id.*

Here, the parties had previously agreed on the value of Pearcy's trade secrets when PPI, controlled by Hughes, entered into the licensing agreement with Pearcy in 2006. They specifically agreed that Pearcy's trade secrets were worth up to $1,350,000 in licensing fees plus a $100,000 payment for full ownership. The Comal County jury determined that PPI had breached this agreement by using Pearcy's trade secrets without paying the required royalties and the $100,000 option payment and awarded Pearcy $714,010—equal to the unpaid royalties plus the $100,000 purchase price. The Comal County trial court then entered a $995,847.11 judgment in favor of Pearcy, which included the $714,010 damages figure, attorney's fees, and prejudgment interest.

The measure of damages used by the district court here—"[t]he current amount due under the Comal County judgment"—consisted of that $995,847.11 judgment plus accrued interest. Hughes asserts that this measure was improper as a matter of law because the Comal County judgment included attorney's fees and prejudgment interest. But as explained above, that judgment was based on the Comal County jury's award of $714,010 in actual damages, which represented the unpaid portion of the value that the parties had previously assigned to Pearcy's trade secrets. The attorney's fees and prejudgment interest included in the Comal County judgment simply represented additional losses incurred as a result of PPI's breach and misappropriation. If anything, the existence of the prior Comal County judgment allowed "damages [to] be ascertained with precision" more exacting here than in the mine run of cases. *Berry-Helfand*, 491 S.W.3d at 711. As such, we cannot say that the district court abused its discretion by instructing the jury to consider the Comal County judgment as the measure of actual damages for misappropriation.

No. 20-50671

### 2.    Exemplary Damages

Hughes also challenges the jury's award of exemplary damages. The jury awarded them after separately finding that the harm "caused by Lou Ann Hughes resulted from malice, fraud, or gross negligence[.]" Denying Hughes's Rule 50(b) motion, which challenged the sufficiency of the evidence in support of exemplary damages as to each possible ground, the district court upheld the award, concluding "that a reasonable jury could [find] that Plaintiffs sufficiently proved 'fraud, malice, or gross negligence' by Hughes."

On appeal, Hughes again challenges the sufficiency of the evidence to support exemplary damages. She contends that Pearcy failed to present sufficient evidence that she acted with specific intent to cause "an injury independent of and qualitatively different" from the underlying misappropriation, a showing which is required to show malice. Hughes also asserts that Pearcy failed to the establish that she "subjectively knew about an extreme degree of risk," a predicate for gross negligence. But, irrespective of the merits of her arguments on these points, Hughes does not separately challenge the sufficiency of the evidence regarding fraud,[7] which "is an independent basis to support [an] award of exemplary damages." *Control Works, Inc. v. Seeman*, No. 01-17-00212-CV, 2018 WL 3150339, at *6 (Tex. App—Houston [1st Dist.] June 28, 2018, no pet.) (mem. op.); s*ee also* Tex.

---

[7] Hughes elsewhere asserts, with regard to Pearcy's and Thomas's TUFTA claims, that the evidence was insufficient to support a finding of actual fraudulent transfer. But that issue turns on a preponderance of the evidence standard, *see Matter of Galaz*, 850 F.3d 800, 804 (5th Cir. 2017), whereas the jury's finding of fraud in the exemplary damages context had to be supported by clear and convincing evidence. Of course, if the evidence was insufficient to support actual fraud as to the TUFTA claims, it would also fail to support exemplary damages. But Hughes nowhere makes the separate argument on appeal that even if there was a preponderance of evidence showing actual fraud, there was not clear and convincing evidence to support exemplary damages based on that ground.

Civ. Prac. & Rem. Code § 41.003(a). Hughes has thus likely forfeited any argument that the evidence was insufficient to show fraud by clear and convincing evidence, as necessary to support the jury's exemplary damages award. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief [it] on appeal.").

Forfeiture aside, there was clear and convincing evidence from which a reasonable jury could have concluded that Pearcy suffered harm as a result of Hughes's actual fraud. As discussed *infra* in Part IV. C. and D., the record supports the jury's finding that Hughes transferred assets "with actual intent to hinder, delay, or defraud" Pearcy, and that Hughes used entities "as a means of evading an existing legal obligation for the purpose of perpetrating and did perpetrate an actual fraud on . . . Pearcy." That evidence is sufficient to support the jury's finding under the clear and convincing standard that the harm to Pearcy "resulted from . . . fraud." *See Jang Won Cho v. Kun Sik Kim*, 572 S.W.3d 783, 810 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *Pettit v. Tabor*, No. 06-19-00002-CV, 2020 WL 216025, at *15–16 (Tex. App.—Texarkana Jan. 15, 2020, pet. denied) (mem. op.). We therefore find no reversible error in the jury's award of $1.2 million in exemplary damages.

### 3. Injunctive Relief

In addition to the jury's actual and exemplary damages, the district court entered a permanent injunction barring Hughes and Performance Probiotics from manufacturing or selling any products incorporating or derived from Pearcy's trade secrets until they had satisfied the court's judgment. "We review [a] district court's grant or denial of a permanent injunction for abuse of discretion." *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 594 (5th Cir. 2003). An abuse of discretion occurs where the trial court "(1) relies on clearly erroneous factual findings . . . [,] (2) relies on erroneous conclusions of law . . . , or (3) misapplies the factual or legal

No. 20-50671

conclusions when fashioning its injunctive relief." *Peaches Entm't Corp. v. Entm't Repertoire Assocs., Inc.*, 62 F.3d 690, 693 (5th Cir. 1995).

To secure injunctive relief for the misappropriation of trade secrets, plaintiffs must show that they lack an adequate remedy at law. *Pike v. Tex. EMC Mgmt., LLC*, 610 S.W.3d 763, 792–93 (Tex. 2020). "[A]n adequate remedy at law exists when the situation sought to be enjoined is capable of being remedied by legally measurable damages." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 848 (5th Cir. 2004). On appeal, Hughes asserts that injunctive relief was improper as a matter of law because the award of monetary damages served as an adequate remedy.[8]

While it is true that the jury awarded "legally measurable damages" to Pearcy for Hughes's misappropriation of trade secrets, the history of this case makes clear that such damages, without more, are incapable of remedying "the situation sought to be enjoined." *Id.* The Comal County jury originally awarded damages against PPI for breach of contract and misappropriation of trade secrets. But that award did not stop Hughes and companies she controlled from misappropriating Pearcy's trade secrets again. Moreover, the money damages awarded to Pearcy compensate for *past* misappropriation, while the injunctive relief was fashioned by the district court to prevent *future* misappropriation—until the court's judgment is satisfied, neither Hughes nor her companies have any more right to use Pearcy's trade secrets than they did before. We agree with the district court that "the evidence adduced at trial and supported by the jury's verdict shows

---

[8] At oral argument, the parties expressed that the appeal of the injunctive relief set forth in the district court's judgment was likely moot. However, in subsequent correspondence requested by this court, they clarified that the issue was not moot because of Hughes's "concern[] that the injunction is not limited to trade secrets and product formulas belonging to Performance Probiotics . . . ." Accordingly, we address the district court's injunctive relief on the merits.

that without injunctive relief, [Hughes] could continue harming Plaintiffs, which would . . . defeat the entire purpose of this long, expansive litigation."

## B.   *Breach of Fiduciary Duty*

In the district court, Thomas asserted that Hughes breached her fiduciary duty as PPI's attorney by engaging in unfair self-dealing when she transferred PPI's assets to Performance Probiotics, causing PPI to cease operations while Performance Probiotics continued to generate substantial profits for Hughes. The jury determined that Hughes breached her fiduciary duty to PPI, and the district court ordered Hughes to disgorge $859,490 in compensation from Performance Probiotics. On appeal, Hughes asserts that she did not breach her fiduciary duty to PPI and that even if she did, the district court's fee forfeiture award was improper or otherwise excessive.

"To prevail on a breach-of-fiduciary-duty claim, a plaintiff must prove (1) the existence of the fiduciary relationship; (2) a breach of that duty by the attorney defendant; (3) that causes; (4) damages to the plaintiff." *Beck v. Law Off. Of Edwin J. (Ted) Terry, Jr., P.C.*, 284 S.W.3d 416, 429 (Tex. App.—Austin 2009, no pet.). But where, as here, a plaintiff seeks the equitable remedy of fee forfeiture from an attorney who breaches the duty, he need not "prove causation or damages if the court finds the attorney's conduct was a 'clear and serious breach of duty' and that forfeiture of the fee (or some portion of it) is 'necessary to satisfy the public's interest in protecting the attorney-client relationship.'" *Id.* (quoting *Burrow v. Arce*, 997 S.W.2d 229, 246 (Tex. 1999)); *accord In re UTSA Apartments 8, L.L.C.*, 886 F.3d 473, 495 (5th Cir. 2018).

### 1.   **Duty**

As a threshold matter, Hughes asserts that there was insufficient evidence that she had an attorney-client relationship with PPI in 2012 such that she owed PPI any fiduciary duty. But Hughes failed to preserve this issue

for appeal because she did not raise it in her post-trial Rule 50(b) motion. *See OneBeacon Ins. Co.*, 841 F.3d at 676, 680. Even apart from forfeiture, Hughes's argument fails. Hughes testified at trial that she served as PPI's attorney in PPI's dealings with the U.S. Patent and Trademark Office ("USPTO"). And the parties stipulated that Hughes was listed on a USPTO filing as the attorney of record for PPI with respect to its registered trademark. Hughes contends that she no longer owed PPI any fiduciary duty in 2012 because the USPTO filing reflected its last entry in 2008. But the record shows that Hughes's legal office received correspondence for PPI from the USPTO as late as April of 2017. This was a sufficient basis for the jury to conclude that Hughes owed PPI a fiduciary duty at the time of the alleged breach.

### 2.    Breach

"Under Texas law, where a fiduciary engages in a transaction with a party to whom the fiduciary owes duties, a presumption of unfairness arises, and the burden is placed on the fiduciary to establish that the transaction was fair." *Navigant Consulting, Inc. v. Williams*, 508 F.3d 277, 295 (5th Cir. 2007) (citing *Miller v. Miller*, 700 S.W.2d 941, 947 (Tex. App.—Dallas 1985, writ ref'd n.r.e.)). To determine whether a transaction involving a fiduciary was fair, courts consider "(1) whether there was full disclosure regarding the transaction, (2) whether the consideration (if any) was adequate, and (3) whether the beneficiary had the benefit of independent advice." *UTSA Apartments*, 886 F.3d at 492 (quoting *Est. of Townes v. Townes*, 867 S.W.2d 414, 417 (Tex. App.—Houston [14th Dist.] 1993, writ denied)). We have found, "especially in the context of self-dealing transactions where a fiduciary derives personal profit through dealings with the principal or its property, [that] 'the form of the transaction will give way to the substance of what actually has been brought about.'" *UTSA Apartments*, 886 F.3d at 493 (quoting *Navigant*, 508 F.3d at 296).

At trial, Hughes confirmed that she was the only person involved in forming Performance Probiotics, that she ceased working for PPI when she began working for Performance Probiotics, and that all of PPI's employees transferred to Performance Probiotics.    There was evidence that Performance Probiotics used the same product names and advertising as PPI, and that Performance Probiotics used trademarks registered by PPI.  There was also testimony that Performance Probiotics sold the same products as PPI, and that Performance Probiotics's products were derived from Pearcy's trade secrets, indicating that Hughes transferred those trade secrets to Performance Probiotics.

In short, there was sufficient evidence from which a rational jury could have concluded that Hughes engaged in a self-dealing transaction with PPI, meaning that the presumption of unfairness attached. *See Navigant*, 508 F.3d at 295.  Although Hughes disputes this evidence, she relies almost entirely on her own testimony, which the jury was entitled to discredit.

And Hughes makes no effort on appeal to argue that the transaction at issue was fair.  Indeed, that would likely be futile, as neither Performance Probiotics nor Hughes compensated PPI for taking its intangible assets. Instead, Hughes asserts that her acts were outside the scope of her attorney-client relationship with PPI.  She relies on the well-understood rule that "a lawyer's fiduciary duties to a client . . . 'extend[] only to dealings within the scope of the underlying relationship of the parties.'" *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 159 (Tex. 2004) (quoting *Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex. 1977)).

Hughes overstates the import of this rule, which merely sets forth that attorneys cannot be held liable for failing to provide services beyond those they were hired to provide.  In cases like this one, the rule does not limit the more general principle that attorneys must deal with their clients in good faith

No. 20-50671

and avoid unfair self-dealing. *See Goffney v. Rabson*, 56 S.W.3d 186, 193 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Because the evidence supported that Hughes engaged in unfair self-dealing by transferring PPI's intangible assets to Performance Probiotics, it was reasonable for the jury to conclude that Hughes breached her fiduciary duty to PPI.

### 3.    Fee Forfeiture

This court reviews a district court's award of equitable relief for abuse of discretion. *Bear Ranch, L.L.C. v. Heartbrand Beef, Inc.*, 885 F.3d 794, 805 (5th Cir. 2018); *accord Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 638 (5th Cir. 2007). "A district court abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Mann*, 161 F.3d 840, 861 (5th Cir. 1998).

In *Burrow v. Arce*, the Texas Supreme Court carefully outlined the considerations that govern a court's equitable award of fee forfeiture for an attorney's breach of fiduciary duty. 997 S.W.2d at 237–46. The court noted that although fee forfeiture serves to compensate an injured client for his attorney's disloyalty, the "central purpose of the equitable remedy of forfeiture is to protect relationships of trust by discouraging agents' disloyalty." *Id.* at 238. Because the main aim of the remedy is deterrence, it is irrelevant whether the attorney's breach caused the client any damages. *Id.* at 239–40.

At the same time, *Burrow* cautions that fee forfeiture is not automatic. *Id.* at 241. Rather, "[t]he remedy is restricted to 'clear and serious' violations of duty." *Id.* To determine whether a breach of duty justifies fee forfeiture, a court must consider the following factors: (1) "the gravity and timing of the violation," (2) "its wilfulness," (3) "its effect on the value of the lawyer's work for the client," (4) "any other threatened or actual harm to the client," (5) "the adequacy of other remedies," and (6) "the public

20

interest in maintaining the integrity of attorney-client relationships." *Id.* at 243–44 (internal quotation marks and citation omitted).

The district court weighed the *Burrow* factors and ordered that Hughes forfeit all compensation she received from Performance Probiotics and pay it to Thomas, on behalf of PPI. On appeal, Hughes contends that the district court erred in calculating the fee forfeiture award because the breach of duty upon which the award was based arises from the fiduciary relationship between Hughes and PPI, not Hughes and Performance Probiotics.

Under Texas law, "courts may disgorge *all* ill-gotten profits from a fiduciary when a fiduciary agent usurps an opportunity properly belonging to a principal, *or competes with a principal*." *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 873 (Tex. 2010) (emphasis added). However, several courts, including this one in an unpublished opinion, have found that the fee forfeiture remedy does not extend to fees received from third parties. *See Liberty Mut. Ins. Co. v. Gardere & Wynne*, *L.L.P*, 82 F. App'x 116, 121 (5th Cir. 2003) (holding that a client was not entitled to disgorgement of fees the defendant law firm had earned by disloyally representing a third-party client); *Elizondo v. Krist*, 338 S.W.3d 17, 25 (Tex. App.—Houston [14th Dist.] 2010) ("[P]laintiffs should not be allowed to recover fees paid by a third party."), *aff'd*, 415 S.W.3d 259 (Tex. 2013); *Swank v. Cunningham*, 258 S.W.3d 647, 673–74 (Tex. App.—Eastland 2008, pet. denied) (finding that "[e]quity does not support such a 'windfall' result"). To the extent these courts articulated a rationale for restricting the forfeiture remedy, it was that the limitation was necessary to prevent a "windfall" to the plaintiffs. *E.g.*, *Swank*, 258 S.W.3d at 673; *see also Gardere & Wynne*, 82 F. App'x at 121 (emphasizing that permitting forfeiture of third-party gains would upset the "remedial" aspects of *Burrow*'s scheme).

Hughes's argument nonetheless fails for two related reasons. First, unlike in *Gardere & Wynne*, *Elizondo*, and *Swank*, the entity that paid the disgorged fees here, Performance Probiotics, was not an independent third party. Hughes controlled Performance Probiotics and effectuated the transfer of PPI's assets to Performance Probiotics. Beyond that, there is no "windfall" given the record in this case. Hughes unfairly transferred PPI's assets to Performance Probiotics, in breach of her fiduciary duty to PPI, and then used those assets to generate the fees at issue. That is, even though Hughes was paid by Performance Probiotics, she was effectively paying herself with funds that were rightfully PPI's. We find no abuse of discretion in the district court's award of fee forfeiture in this context as it accords with the general rule that disloyal agents must disgorge their ill-gotten gains. *See Swinnea*, 318 S.W.3d at 873.

### C.    *Fraudulent Transfer*

Pearcy's and Thomas's TUFTA claims are premised on a theory of actual fraud. "[T]he elements of an actual fraudulent transfer under TUFTA are: (1) a creditor; (2) a debtor; (3) the debtor transferred assets shortly before or after the creditor's claim arose; (4) with actual intent to hinder, delay, or defraud any of the debtor's creditors." *In re Life Partners Holdings, Inc.*, 926 F.3d 103, 117 (5th Cir. 2019); *see* Tex. Bus. & Com. Code Ann. § 24.005(a)(1).

Hughes first asserts that there was insufficient evidence to establish that she transferred anything from PPI. TUFTA defines "transfer" as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, and creation of a lien or other encumbrance." Tex. Bus. & Com. Code Ann. § 24.002(12). Hughes maintains there was nothing to suggest that PPI disposed of any assets as

required by TUFTA. But there was evidence that Performance Probiotics used PPI's intangible assets as PPI ceased operations. A jury could logically conclude from this that the requisite "parting" of assets occurred. We conclude, as we did above with respect to Thomas's breach of fiduciary duty claim, that there was sufficient evidence for the jury to conclude that Hughes caused PPI to transfer its intangible assets to Performance Probiotics.

Hughes also asserts that there was insufficient evidence to support a finding of actual fraudulent intent. TUFTA permits plaintiffs to "rely on circumstantial evidence to establish the [defendant's] fraudulent intent." *Roland v. United States*, 838 F.2d 1400, 1402–03 (5th Cir. 1988). To this end, the statute provides a non-exclusive list of eleven so-called "badges of fraud" that the finder of fact may consider:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; and (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

Tex. Bus. & Com. Code Ann. § 24.005(b). This court has held that "[w]hen several of these indicia of fraud are found, they can be a proper basis for an inference of fraud." *Roland*, 838 F.2d at 1403; *see also Janvey v. Golf*

*Channel, Inc.*, 487 S.W.3d 560, 566–67 (Tex. 2016) ("Evidence of a single 'badge of fraud' does not conclusively demonstrate intent, but a confluence of several presents a strong case of fraud.").

Upon reviewing the record, we find *at least* five of the "badges of fraud" present, weighing in favor of an inference of Hughes's actual fraudulent intent. First, Hughes was plainly an "insider" because she controlled PPI and Performance Probiotics. *See* Tex. Bus. & Com. Code Ann. § 24.002(7)(B)(iii) (defining the term "insider" to include "a person in control of the debtor"). Second, although PPI, the actual debtor on the Comal County judgment, did not retain control of the property Hughes transferred to Performance Probiotics, Hughes did. Because Hughes controlled both PPI and Performance Probiotics, she continued to control PPI's assets following the transfer. This retention of control suggests fraudulent intent.

Next, not only did Pearcy file suit against PPI before the transfer in 2012, but the evidence showed that Hughes began taking steps to operate through Performance Probiotics just days after the Comal County jury returned its verdict. Likewise, the jury could reasonably conclude that Hughes transferred substantially all of PPI's assets given that PPI completely ceased operations following the transfer, subsequently filed for bankruptcy, and reported relatively few assets on its bankruptcy petition. Finally, PPI was paid nothing for the intangible assets that were transferred to Performance Probiotics.

Under our precedent, the presence of (at least) these five badges of fraud is a sufficient basis for the jury to conclude that Hughes transferred PPI's assets with fraudulent intent. *Cf. Spring Street Partners-IV, LP v. Lam*, 730 F.3d 427, 438 (5th Cir. 2013) (concluding that the district court appropriately determined that transfer had been made with actual fraudulent

intent where three badges of fraud were present).  Because there was sufficient evidence of both a transfer and fraudulent intent, the district court did not err in upholding the jury's verdict with respect to Pearcy's and Thomas's TUFTA claims.

## D. *Veil Piercing*

Under Texas law, an obligee generally may not pierce an entity's corporate veil unless it demonstrates that the entity was "used for the purpose of perpetrating and did perpetrate an actual fraud on the obligee primarily for the direct personal benefit of the [entity's] holder, beneficial owner, subscriber, or affiliate."  Tex. Bus. Org. Code Ann. § 21.223(b); *see also id.* § 21.224 (stating § 21.223 preempts common law veil piercing).  This rule applies to limited liability companies and corporations alike.  *U.S. KingKing, LLC v. Precision Energy Servs., Inc.*, 555 S.W. 3d 200, 212–13 (Tex. App.—Houston [1st Dist.] 2018, no pet.).

This court has interpreted § 21.223 to mean that a party may pierce an entity's corporate veil if it establishes that the entity's owner "perpetrated an actual fraud for his direct personal benefit."  *In re Ritz*, 832 F.3d 560, 566 (5th Cir. 2016) (citing *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 454 (Tex. 2009)); *accord Belliveau v. Barco, Inc.*, 987 F.3d 122, 129 (5th Cir. 2021).  Further, this court has held that the "actual fraud" requirement is satisfied if the obligee establishes "that a transfer is fraudulent under the actual fraud prong of TUFTA."  *In re Ritz*, 832 F.3d at 567.  Because we have already determined that Hughes fraudulently transferred PPI's assets, we need only consider the second requirement—i.e., whether such transfer was "for [Hughes's] direct personal benefit."

This requirement is met where the "evidence show[s] that funds derived from the corporation's allegedly fraudulent conduct were pocketed by or diverted to the individual defendant."  *Hong v. Havey*, 551 S.W.3d 875,

885 (Tex. App.—Houston [14th Dist.] 2018, no pet.). Hughes contends that the second prong is not satisfied where, as here, an individual purportedly perpetrates a fraud solely to be able to continue to operate a business and continue to receive a salary. However, the cases she cites are inapposite.

In *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, a sponsorship-procurement company wrongfully failed to remit sponsorship funds to its client. 237 S.W.3d 379, 383 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Although the firm had engaged in fraudulent conduct, the court concluded that its owner could not be held personally liable because there was no evidence that he used the misappropriated funds for personal purposes, received any sort of indirect benefit from the misappropriation, or even received a salary from his sponsorship agency. *Id.* at 388. By contrast, in this case there is ample evidence that Hughes benefitted financially from operating Performance Probiotics, as she received hundreds of thousands of dollars in compensation—funds incidentally, that PPI could have used to satisfy the Comal County judgment had PPI retained its assets and continued to operate.

In *Viajes Gerpa, S.A. v. Fazeli*, a group of travel agencies entered into a settlement agreement with a group of ticket fulfillment websites, under which the websites were required to pay the agencies a percentage of their net cash flow for a specified period. 522 S.W.3d 524, 527–28 (Tex. App.—Houston [14th Dist.] 2016, pet. denied). One website failed to make its payments, and three years after the entry of the settlement, the website's owner sold the company's assets to a new entity in which his mother was a principal. *Id.* at 528–29, 529 n.7. The *Viajes Gerpa* court concluded that, even assuming the owner's conduct amounted to fraud, there was insufficient evidence that the fraud had personally benefitted him. Although the transfer allowed him to continue operating and controlling the ticket fulfillment website, the court determined that, because the transfer occurred

three years after the settlement was entered, there was too great a temporal gap for the two events to be related. *Id.* at 534–35. Again, our case is distinguishable because unlike *Viajes Gerpa*, the evidence here indicates that Hughes began taking steps to operate through Performance Probiotics just six days after the Comal County jury returned its adverse verdict.

Conversely, we find *Tryco Enterprises, Inc. v. Robinson* to be instructive. 390 S.W.3d 497 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd). In *Tryco*, the court found a direct personal benefit where the defendants, after the plaintiff had obtained a judgment against a company they controlled, transferred that company's assets and employees to a new company they also controlled that operated a virtually identical business, leaving the old company unable to satisfy the plaintiff's judgment. *Id.* at 501–04, 510–11. As in *Tryco*, the evidence in this case indicates that Hughes took the same approach, transferring the assets and employees of one company she controlled (PPI) to another company she controlled (Performance Probiotics) so that she could continue to operate the business without having to satisfy the Comal County judgment. This was sufficient for the jury to find that Hughes perpetrated the fraudulent transfer for her direct personal benefit, thus allowing Pearcy and Thomas to pierce the corporate veil.

### E.    *Double Recovery*

Under Texas's "one satisfaction rule, a plaintiff is entitled to only one recovery for any damages suffered." *Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378, 390 (Tex. 2000). "[T]he rule is intended to prevent a plaintiff's double recovery based on a single injury" and applies whenever the "plaintiff has suffered a single, indivisible injury." *Sky View at Las Palmas, LLC v. Mendenz*, 555 S.W.3d 101, 113 (Tex. 2018).

Hughes asserts that the district court's judgment contravenes the one-satisfaction rule because it permits Pearcy to recover twice on his

misappropriation-of-trade-secrets claim. The jury awarded Pearcy "[t]he current amount due under the Comal County judgment" as compensatory damages for misappropriation. The district court then confirmed that award in its judgment. However, the court went on to state later in the judgment that: "Lou Ann Hughes and Performance Probiotics, LLC are jointly and severally liable for: a) all relief granted herein against Lou Ann Hughes and Performance Probiotics, LLC; *and* b) all amounts due and payable under the [Comal County] judgment . . . ." (Emphasis added.).

We agree with Hughes that, read literally, the district court's summation of the defendants' liability for the relief awarded using the conjunctive "and" between "a) all relief granted herein . . . ," and "b) . . . the [Comal County] judgment" raises the possibility of double recovery. Therefore, we modify the district court's judgment to clarify that if Hughes satisfies "[t]he current amount due under the Comal County judgment"—i.e., $1,442,580.06 plus post-judgment interest—no further *compensatory* damages for misappropriation of trade secrets are owed. Just to be clear, this clarification does not otherwise disturb the other categories of relief embodied in the district court's judgment.

### F. *Jurisdiction Over API*

The district court also noted in its judgment that no relief had been granted against API. However, it nonetheless retained jurisdiction over API so it could grant any appropriate relief should PPI, Performance Probiotics, or Hughes transfer assets into the entity. Hughes asserts that the exercise of jurisdiction over API was improper because there was no evidence that it "did anything—let alone something actionable."

The Supreme Court has held that a district court has "jurisdiction in subsequent proceedings for the exercise of [its] inherent power to enforce its judgments." *Peacock v. Thomas*, 516 U.S. 349, 356 (1996) (noting that

No. 20-50671

"[w]ithout jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate'") (quoting *Riggs v. Johnson Cnty.*, 73 U.S. (6 Wall.) 166, 187 (1867)); *see also Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 380 (1994) (explaining a federal court has ancillary jurisdiction "to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees"). This ancillary enforcement jurisdiction extends to a "broad range of supplementary proceedings involving third parties," but does not permit "a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Peacock*, 516 U.S. at 356–57.

Under *Peacock*, "a district court has enforcement jurisdiction over a judgment creditor's fraudulent conveyance claims against transferees who were not parties to the underlying action," so long as the creditor limits himself to collecting the judgment debtor's assets, rather than attempting to impose liability on the transferees for the original judgment. *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001); *accord Ellis v. All Steel Const., Inc.*, 389 F.3d 1031, 1034 (10th Cir. 2004); *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 498–500 (1st Cir. 2000); *Thomas, Head & Greisen Emps. Tr. v. Buster*, 95 F.3d 1449, 1454 & n.7 (9th Cir. 1996). Here, the district court did not retain jurisdiction over API to impose liability on API for the original judgment. Rather, the court retained jurisdiction so that it could counter any improper transfers by PPI, Performance Probiotics, or Hughes to API. We find no error in the district court's retention of jurisdiction over API as it comports with *Peacock*.

## V.

Hughes next contends that the district court erred by denying her motion for a new trial. "[W]here a jury award is reviewed indirectly through

the conduit of the trial court's response to a motion for new trial . . . , it is the propriety of the judge's action rather than the jury's decision that is reviewed." *Stokes v. Georgia-Pac. Corp.*, 894 F.2d 764, 769 (5th Cir. 1990). "Because the district court has a wide range for discretion in acting on such motions, our standard of review is not simply right or wrong but abuse of discretion." *Sam's Style Shop v. Cosmos Broad. Corp.*, 694 F.2d 998, 1006 (5th Cir. 1982).

We have held that, following a jury verdict, a district court does not abuse its discretion in denying a motion for a new trial "unless there is a complete absence of evidence to support the verdict." *Id.* It should be clear by this point that that is not the case here. Because there was sufficient evidence to support the jury's verdict, we affirm the district court's denial of a new trial.

## VI.

Finally, Hughes challenges the district court's award of attorney's fees and expenses. "This court reviews awards or denials of attorney's fees for abuse of discretion; factual findings supporting a fee award are reviewed for clear error, and legal conclusions underlying a fee award are reviewed de novo." *Janvey v. Dillon Gage, Inc.*, 856 F.3d 377, 392 (5th Cir. 2017). Texas law provides a substantially similar standard of review. *Id.* (citing *Shaw v. Cty. of Dall.*, 251 S.W.3d 165, 171 (Tex. App.—Dallas 2008, pet. denied)); *see also Yamin v. Carroll Wayne Conn, L.P.*, 574 S.W.3d 50, 69 (Tex. App.—Houston [14th Dist.] 2018, pet. denied).

Under Texas Business and Commerce Code § 24.013, courts presiding over TUFTA cases are empowered to "award costs and reasonable attorney's fees as are equitable and just." On appeal, Hughes concedes that if Pearcy and Thomas prevail on their TUFTA claims, they are entitled to attorney's fees and costs under § 24.013. However, Hughes maintains that

Pearcy and Thomas failed properly to segregate recoverable fees, stemming from their attorneys' work on their TUFTA claims, from unrecoverable fees, incurred as a result of their other claims.[9]

Under Texas law, "if any attorney's fees relate solely to a claim for which such fees are unrecoverable, a claimant must segregate recoverable from unrecoverable fees." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). However, segregation is not necessary "when the causes of action involved in the suit are dependent upon the same set of facts or circumstances and thus are '[intertwined] to the point of being inseparable.'" *Id.* at 311 (quoting *Stewart Title Guar. Co. v. Sterling*, 822 S.W.2d 1, 11–12 (Tex. 1991)). This exception is met only where the relevant "legal services advance both recoverable and unrecoverable claims." *A.G. Edwards & Sons, Inc. v. Beyer*, 235 S.W.3d 704, 710 (Tex. 2007).

Here, one of Pearcy and Thomas's attorneys submitted a detailed report of his firm's time entries in this case, and averred that the fees could not be segregated because "the legal services provided . . . were necessary for all of the claims." The district court reviewed the report and concluded that the requested fees were inseparable, save for a small amount related to claims Pearcy and Thomas had abandoned at trial. The district court reasoned that because all the claims in the lawsuit hinged on whether Hughes had fraudulently transferred PPI's intellectual property, all of the evidence that Pearcy and Thomas adduced regarding their non-TUFTA claims was duplicative of evidence offered to support their TUFTA claim. The district

---

[9] Hughes also contends that certain portions of the awarded fees and expenses are unreasonable. But we need not address this argument as Hughes failed to raise it before the district court. *See Rollins*, 8 F.4th at 397 ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal . . . .").

court similarly concluded that the efforts of Pearcy and Thomas's attorneys in attempting to collect the Comal County judgment prior to PPI's bankruptcy, opposing Hughes's motion to dismiss, and opposing Hughes's motion for summary judgment all advanced both recoverable and unrecoverable claims such that segregation of the resulting fees was not possible.

The district court did not clearly err in its assessment of the efforts of Pearcy and Thomas's attorneys. It is clear from the record that the evidence relating to the misappropriation and breach of fiduciary duty claims substantially overlaps with the evidence required to show that Hughes violated TUFTA. Chiefly, all the claims relied on evidence that Hughes had transferred Pearcy's trade secrets from PPI to Performance Probiotics. Accordingly, we discern no abuse of discretion and we affirm the district court's award of attorney's fees and expenses.

## VII.

To sum up: The district court did not err by limiting Hughes's testimony as it did. The evidence was sufficient for the jury to conclude (1) that Hughes and Performance Probiotics misappropriated Pearcy's trade secrets; (2) that Hughes breached her fiduciary duty to PPI; (3) that Hughes fraudulently transferred assets in violation of TUFTA; and (4) to support the jury's decision to pierce the corporate veils of PPI and Performance Probiotics.

Likewise, the district court did not err by retaining jurisdiction over API or abuse its discretion either in denying Hughes's motion for a new trial or in awarding Pearcy and Thomas attorney's fees and expenses.

For clarity, because the district court's judgment could be read to allow for a duplicative recovery, we modify the judgment affirmatively to

No. 20-50671

state that the plaintiffs may not recover the amount of the Comal County judgment twice.  Otherwise, the judgment of the district court is

AFFIRMED AS MODIFIED.